IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

JAMES R. MCKOWN AND MARGARET J.
MCKOWN, individually and on behalf of
all others similarly-situated,

     Plaintiffs,

  v.

AMERICAN HONDA MOTOR COMPANY,
INC.,

     Defendant.

## PLAINTIFFS' CLASS ACTION COMPLAINT

   Plaintiffs James R. McKown and Margaret J. McKown ("Plaintiffs"), individually, and on behalf of all others similarly situated, bring this class action against Defendant American Honda Motor Company, Inc. ("Honda" or "Defendant"), and in support thereof aver the following based upon personal information and investigation of their counsel:

## INTRODUCTION

   1.  This is a class action lawsuit brought by Plaintiffs on behalf of themselves and a class of current and former owners and lessees of certain Honda vehicles with soy-based insulation and/or other soy-based parts and components (the "Class Vehicles"[1]). Plaintiffs seeks redress on behalf of themselves and the class(es) defined herein for

---

   [1] As used herein, the term "Class Vehicles" refers to all 2012-2015 model year Honda vehicles.

diminished value and other damage resulting from the inclusion of soy-based materials in Class Vehicle wiring systems.

2.   As discussed in more detail below, the Class Vehicles suffer from defective electrical wiring and fuel line systems in that the systems are coated or made with soy-based insulation and other soy-based products that attract rodents and other pests which eat and destroy the wiring and fuel lines, threatening the integrity of the operational systems and causing substantial economic damage (the "Defect").

3.   The soy-based insulation is purportedly more environmentally-friendly and less expensive than traditional parts and components. However, the soy-based insulation attract a variety of rodents and other animals that gnaw through and eat the insulation, wires and fuel lines, causing damage to Class Vehicle operating systems. As a result, Class Vehicles are rendered wholly or partially disabled or otherwise fail to function properly.

4.   As the numerous complaints posted on the National Highway Traffic Safety Administration ("NHTSA") website and other consumer resources reveal, rodents are attracted to the soy-based components used in the Class Vehicles.

5.   Despite the fact that Honda is aware or should be aware if the Defect, Honda fails to disclose the Defect to Class Vehicle purchasers and lessees, and it routinely refuses to repair rodent and other animal damage resulting from the Defect in Class Vehicles under its New Vehicle Limited  Warranty (the "Warranty") without a charge to

consumers, despite that this type of damage is not excluded from coverage under the terms of the Warranty.

6.   Worse still, when Honda repairs Defect-related damage at the expense of Class members, it simply incorporates new defective soy-based parts or components, exposing Class vehicles to the risk and likelihood of future rodent or animal damage which will necessitate additional repairs, all to be paid for by Class members.

7.   As if this is not bad enough, when Class members bring their Class Vehicles to Honda's authorized dealer and/or service stations for Defect-related repairs, Honda recommends that Class members implement makeshift solutions to prevent further damage, including but not limited to using chemicals, sprays, traps, tapes, repellants, wrapping wires and even using a high frequency noise-emitting electronic device commonly known as MouseBlocker. However, if Honda installs these preventive measures, it charges consumers for the costs associated therewith.

8.   Current and former Class Vehicle owners and lessees should not be required to bear the costs of the Defect nor should current owners and lessees be required to bear the risk of later out-of-warranty problems for damaged soy-based insulation.

9.   As a result of the defect and the monetary costs associated with repairs, Plaintiffs and Class members have suffered injury in fact, incurred damages, and have otherwise been harmed by Honda's conduct.

10. Accordingly, Plaintiffs seek redress for Honda's violations of various state consumer protection laws and state and federal warranty laws. Plaintiffs also seek

-2-

recovery for monetary and equitable relief for Honda's failure to implement or honor the terms of its Warranty, breaches of implied warranties, unjust enrichment, and declaratory relief.

## JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it arises under the laws of the United States and pursuant to 28 U.S.C. § 1332(d) because (i) there are 100 or more class members; (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs; and (iii) because at least one plaintiff and defendant are citizens of different states. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

12. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Honda is headquartered in this district, is subject to personal jurisdiction in this district, and is therefore deemed to be a citizen of this district. Additionally, Honda has advertised in this district and has received substantial revenue and profits from its sales and/or leasing of Class Vehicles in this district; therefore, a substantial part of the events and/or omissions giving rise to the claims occurred, in part, within this district.

13. This Court has personal jurisdiction over Honda because it is headquartered in this judicial district and intentionally and purposefully placed Class Vehicles into the stream of commerce within this district and throughout the United States.

## **PARTIES**

14. Plaintiffs are citizens of the state of Kansas and currently reside in Stilwell, Kansas. They own two Honda Accords.

15. Honda is a corporation organized under the laws of the State of California and has its principal place of business at 1919 Torrance Boulevard in Torrance, California. It was established in 1959 as the first overseas subsidiary of Honda Motor Co., Ltd., a Japanese corporation. Defendant is responsible for injecting Honda vehicles into the U.S. stream of commerce—a task it performs through a network of thousands of Honda-authorized automobile dealers in the United States. Defendant is responsible for the pre and post-sale marketing of Honda automobiles throughout the United States, as well as the distribution of the same.

16. Defendant is the warrantor of all Honda vehicles sold in the United States. It administers its warranties through a network of dealerships that are authorized by Defendant to sell, service, and provide warranty service for Honda cars. With respect to the provision of any warranty, decision whether to cover any repair under warranty, or interpretation of any warranty obligation, it is Defendant that makes the controlling decision, and its factory-authorized dealerships act as Defendant's agent in this regard. Thus, Defendant controls a U.S. Honda dealership's decision as to whether a particular vehicle is subject to coverage under any Honda express or implied warranty, whether a particular repair falls within the scope of any Honda express or implied warranty

-4-

coverage, and the extent of warranty coverage afforded under any Honda express or implied warranty.

## **FACTUAL ALLEGATIONS**

**A. Plaintiffs Purchase Two Defective Honda Accords**

17. On or about February 6, 2016 Plaintiffs purchased a Certified Pre-Owned 2014 Honda Accord Coupe from Jay Wolfe Honda in Olathe, which is an authorized Honda dealer. The vehicle was purchased for their then 18-year-old son Joseph "Cole" McKown. As a Certified Pre-Owned Vehicle, it was represented that Honda, or its agents, has inspected the vehicle and warranted its fitness.

18. On or about March 19, 2016, Plaintiff James R. McKown purchased a Certified Pre-Owned 2013 Honda Accord from O'Neill Honda in Overland Park, Kansas. The vehicle was purchased for their then 17-year-old son Cade McKown. This vehicle was also a Certified Pre-Owned Vehicle that Honda, or its agents, represented had been inspected, with its fitness warranted.

19. On or about August 16, 2016, the 2014 Accord stopped working in the midst of being driven on a busy thoroughfare. After being towed to a Honda dealership, it was determined by the dealership that the fuel line had been chewed through by a rodent. Luckily, despite fuel having been spewed all over the engine, the vehicle did not catch fire.

20. During repair the maintenance professional noted that the main fuel line at the gas tank had been chewed through, requiring the replacement of numerous fuel line parts including the fuel feed and fuel pipe.

21. The vehicle was repaired at the Honda dealership in part through the use of rodent-deterrent tape. The dealership informed the owner that both it and Honda denied any responsibility for repairs and that any repairs would not be covered by the Warranty.

22. On or about October 17, 2016, the Certified Pre-Owned 2014 Honda Accord was rendered inoperable due to a similar incident involving rodents chewing through soy-based wiring insulation or fuel line insulation.

23. Again the maintenance professional in charge of repairing the vehicle noted that portions of the fuel-delivery system had been chewed through, despite having been replaced only two months prior.

24. On or about October 29, 2016, the Certified Pre-Owned 2013 Honda Accord was rendered inoperable due to a similar incident involving rodents chewing through soy-based insulation on the transmission wiring harness.

25. At all times Honda denied any responsibility and denied that any repairs were covered by the Warranty.

**B. The Defective Soy-Based Insulation in Class Vehicles**

26. Electrical wiring is ubiquitous in modern automobiles. A vehicle's electrical wiring connects the various critical, and non-critical, vehicle systems. The wire creates circuits that must stay intact in order for the vehicle to function as intended.

27. Electrical systems in an automobile deliver and monitor electrical power to various devices and sensors in the vehicle. An automobile's electrical system is complex and is made up of many different components. The battery is the center of and powers the electrical system. The electrical system is made up of a web of connected wires, fuses, and relay systems. This wiring carries the current supplied by the car battery and directs it to various vehicle components. When an electrical component in an automobile is not working correctly, it is often due to an open circuit, which can be caused by a broken or compromised wire or wire connection. When this occurs, vehicle functions that are imperative to safe vehicle operation—*e.g.*, headlights, brake lights, windshield wipers, power windows, defrosters- may not work properly. When electrical wiring is disconnected or compromised, circuits are broken causing systems to partially or completely fail.

28. Fuel lines are another key component of any automobile, responsible for transmitting fuel, a combustible material, safely through the engine.

29. Historically, automobile wiring and fuel lines were coated or covered with a glass, plastic or petroleum-based insulation. However, over the past decade or so, and especially in light of skyrocketing oil prices in the mid-to-late 2000s, there has been a dramatic downshifting in automotive manufacturing which has spurred automobile manufacturers to explore new materials to decrease cost and make parts more recyclable. As a result, automobile manufacturers, including Honda, migrated from petroleum-based

insulation to soy-based insulation because it became considerably less expensive and is purportedly more environmentally-friendly, as it is biodegradable.

30. Insulation is an imperative line of defense to protect the integrity of electrical wiring and fuel lines in automotive systems. But Honda made the decision to switch its insulation to a soy-based material—which invites, rather than protects against, electrical wiring issues and concerns, as set forth herein—and it did so not in the name of "going green" but rather in the name of profit and cost-cutting.

31. Irrespective of Honda's business justifications, the transition to soy-based insulation has created a bed and breakfast for rodents and other animals and pests under the hoods of Class Vehicles at the expense of Class members. Rodents and other animals are attracted to soy in Class Vehicles. The inclusion of soy-based materials in Class Vehicle electrical and fuel line components attracts rodents and other animals that nest under the hoods of Class Vehicles and feast on the soy insulation, wires, and fuel lines, thereby compromising the integrity of Class Vehicle electrical and fuel systems and rendering Class Vehicles fully or partially inoperable. Automobile electrical wiring and fuel lines do not have to be entirely chewed through to jeopardize the functionality of the wiring system. Rather, mere exposure of the wires and fuel lines can make a vehicle unfit for use. The image below depicts substantial rodent damage to the wiring of a 2010

Honda Pilot:



32. The safety concerns raised by wiring damage (such as that depicted above) and failures in automobile electrical and fuel systems are obvious, and Honda's continued use of soy-based insulation poses a legitimate threat to the safety of Plaintiffs, Class members, prospective purchasers or lessees of Class Vehicles and other drivers on the road.

33. As the image above makes clear, soy-based insulation is not suitable for its intended purpose: to protect vehicle wiring and fuel systems in order to keep vehicles operational and safe.

**C. Honda's Knowledge of the Soy-Based Insulation Defect**

34. Honda was aware or should have been aware of the Defect in Class Vehicles through (1) its own records of customers' complaints; (2) dealership repair records; (3) NHTSA records; (4) warranty and post-warranty claims; (5) internal durability testing; and (6) other various sources. Despite its knowledge, Honda failed to notify customers

of the nature and extent of the Defect and/or provide any adequate remedy under the Warranty.

35. Honda is also aware or should have been aware of the Defect, because its agents, dealers, and other representatives routinely and consistently refuse to provide Warranty coverage for damage to Class Vehicles resulting from the Defect. Instead, Honda, through its agents, dealers, and other representatives, compels consumers to either pay for repairs out-of-pocket or to make an insurance claim and pay an expensive deductible.

36. Furthermore, the defective nature of the soy-based insulation has been widely publicized and known within the automotive industry and to Honda specifically.

37. A number of news stations across the United States have done consumer interest stories on soy insulation in automobiles, reporting on how the inclusion of soy materials or ingredients in automobiles attracts pests and causes damage. One news media outlet that claims to be leading a nationwide investigation into this very issue reports (among other findings) the following:

> Many new vehicles now use wiring that has a soy-based coating, which is better for the environment and cheaper to make than the traditional kind. But apparently, rodents love to gnaw on it, which can cause major electrical problems.[2]

---

[2] Jason Stoogenke, Action 9 leads national investigation into rodents chewing on vehicle wires, WSOCTV, June 3, 2016, http://www.soctv.com/news/9-investigates/rodents-chewing-on-vehicle-wiring/23571935 (last visited Dec. 11, 2016).

-10-

38. Consumer media websites have also tracked the propensity of soy-based wiring insulation and coatings to attract animals and result in damage. It has been reported that Honda is "convinced" that there is a problem with its own soy-based insulation and reportedly made plans to introduce a spicy chemical to its wiring to stop rodents from eating it.[3]

39. However, it appears that Honda has instead turned this Defect into another source of income for itself and its dealers by charging Class Vehicle owners and lessees for repairs (or charging for purchase and installation of repellants, traps, and other preventive measures) to deal with the adverse consequences of its soy-based insulation that Honda should, itself, be covering under the Warranty.

40. Honda has evaded and continues to evade its Warranty obligations by failing to tell consumers that their Class Vehicles are defective and by claiming that the susceptibility to rodent damage is "environmental" and not a result of the Defect which requires Warranty repairs or replacements.

41. However, as the numerous consumer complaints below in Section E demonstrate, environmental conditions are not the root cause of the Defect. Rather, the environmentally-friendly and less expensive soy-based coating is the problem. While Class Vehicles are essentially being attacked by rodents and other animals, older vehicles

_____

[3] Tim Esterdahl, *Mice Eat Toyota Tundra Wires – True Story*, Nov. 8, 2013, http://www.tundraheadquarters.com/blog/mice-eat_wires/ (last visited Dec. 11, 2016).

with non-soy-based systems that are exposed to similar conditions do not experience rodent-caused damage.

42. The prevalence of complaints across the country from Honda lessees and owners and the high volume of media and consumer watchdog coverage of this soy insulation issue highlight the disingenuous nature of Honda's denial of (a) the existence of the Defect and (b) a connection between soy insulation in Class Vehicles and rodent damage.

43. Honda has known (or it should have known) that soy-based wiring insulation attracts rodents and other pests that damage Class Vehicles. In fact, employees at Honda dealerships routinely inform consumers that rodent damage is very common. Yet, notwithstanding its knowledge of the defect, Honda consistently refuses to repair the Class Vehicles under the Warranty when the Defect manifests.

**D. Honda's New Vehicle Limited Warranty**

44. Despite Honda's knowledge of the Defect it refuses to honor its Warranty, which provides the following: "Honda will repair or replace any part that is defective in material or workmanship under normal use. . . . All repairs/replacements made under this warranty are free of charge. The replaced or repaired parts are covered only until New Vehicle Limited Warranty expires." *See* Exhibit 1, Warranty Booklet for 2014

Honda Accord.[4] Thus, the Warranty covers *any* defect unless the defect is listed as an exception.[5]

45. The Warranty exceptions, however, are not applicable to the defective soy-based insulation. The exceptions to the Warranty include tires, normal wear and tear, maintenance expenses, vehicles with altered odometers, salvage or total-loss vehicles, and incidental damages. *See* Exhibit 1. Honda routinely cites to the "acts of nature" exception in its Warranty to deny coverage for the Defect repairs. But Honda's voluntary inclusion of soy-based materials in Class vehicles does not constitute an act of nature.

46. Soy-based insulation is not an "act of nature." Unlike acts of nature, Honda created this problem by including soy materials in the manufacturing process for Class Vehicles. Thus, the Defect is the inclusion of soy-based materials in Class Vehicles and the intrinsic nature of the soy-based materials to attract rodents, and the Defect exists in Class Vehicles at the time of manufacturing and when Class Vehicles leave manufacturing locations.

47. Furthermore, the Warranty does not expressly or impliedly disclaim Warranty coverage for rodent or other animal damage in Plaintiffs' Class Vehicles and the same is

---

[4] The warranty booklet for the 2013 Honda Accord is similar in all material respects to the booklet for the 2014 Honda Accord.

[5] While the New Vehicle Warranty covers only the first 3 years or 36,000 miles after purchase, Plaintiffs purchased a Certified Pre-Owned Vehicle, the warranty for which extends the New Vehicle Warranty for an additional 1 year and 12,000 miles from the date of purchase of the Certified Pre-Owned Vehicle.

true for the Warranties that cover all Class Vehicles. If Honda wanted to exclude rodent damage from Warranty coverage, it could have done so. But Honda did not exclude this damage. Honda cannot now rely on the "acts of nature" language in its Warranty exclusions—language which clearly relates to, and was intended to relate to, weather and climate-related conditions that are not explicitly identified in that section—to escape its Warranty obligations to consumers.

48. Notwithstanding its obligation under its Warranties, Honda has repeatedly denied Warranty coverage to Plaintiffs and Class members for Defect-related damage. Honda routinely informs consumers that rodent damage is an act of nature that is not covered under the Warranty. Honda is deflecting its obligations under the Warranty by labeling the Defect—which Honda has knowledge of or should have knowledge of—as something it is not. Honda has refused to cover the costs of repairs due to rodent damage to soy-based insulation. Thus, Plaintiffs and Class members were, and are, forced to pay out-of-pocket for repairs and services that should have been covered under Honda's Warranty.

**E. Similar Experience and Complaints by Consumers**

49. Plaintiffs' experiences are by no means isolated or outlying occurrences. Indeed, the Internet is replete with examples from blogs and other websites where Honda consumers have complained of rodents chewing through their vehicles' soy-based wire insulation, sometimes on multiple occasions.

50. For example, a Honda mechanic told CTWatchDog.com that he sees more than 100 vehicles per year with rodent damage to the electrical systems. The repair costs can start at $50, but quickly balloon to $1,000, or—in the worst case he'd seen—$3,000. "The soy products now used to create the wire insulation concerns me a great deal. This weekend my wife was driving our car, a 2010 Honda Accord, and while on the road the car started to shake and stutter violently, and would not accelerate. After having our car towed to the dealership, there was evidence that a rodent of some type had chewed on the cables. — 2010 Accord Owner."[6]

51. A list posted on www.synlube.com/IncredibleEdibleCar1.htm lists the following incidents involving rodent damage to Honda automobiles:

> ➢ 2016 HONDA Accord (lease) Rodents chewed gas tank and fuel lines. So far Honda's repair bill is $1,500.00. (Marlton, New Jersey).

> ➢ 2016 HONDA Accord (lease) $2,000.00 first incident within 6 weeks of delivery, repeat incident within 1 week after repairs, another $2K. (Waukesha, Wisconsin).

> ➢ 2009 through 2013 HONDA all models - over 100 incidents in just one year (2013).

> ➢ 2013 Honda Insight - 29,400 miles. Rodents chewed through the wiring controlling shifting causing the transmission to go out while the car was in motion. $200+ in damage. (Delran, New Jersey).

> ➢ 2013 HONDA Accord XLE coupe 26k miles; main wiring harness, left turn signal and fender lining destroyed by a wood rat. $2,000 in damages. (Hot Springs, Arkansas).

---

[6] Rodents Love Honda's Soy-Coated Wiring, http://www.hondaproblems.com/trends/soy-wiring (last visited Dec. 11, 2016).

➢ 2012 HONDA Odyssey - needs a Knock Sensor Replacement and anti rodent wiring harness. They said that they are no longer using the rodent tape and are now using a specialty anti rodent wiring harness. My first quote from the Honda dealership where I bought the vehicle was $550; (approx $50 for the sensor and harness and $500 for labor). I received a second opinion and they are saying that it will be $460 total ($50 for the sensor; $210 for the specialty wiring harness; and $200 for labor).

➢ 2012 HONDA Odyssey - certified preowned bought in Sept 2015; Rodents chewed through wiring on ignition coil.

➢ 2012 HONDA Civic - 30k miles; Squirrel damage -July 2014 - 4 repairs for chewed up wiring, 1 repair for chewed gas line had to be towed and gas tank dropped for repair - April 2015 - Power steering failure (fluid loss). (Celina Ohio).

➢ 2012 HONDA Civic - rodents eating through engine wires on two occasions.

➢ 2011 HONDA Odyssey - Rodent damage to wiring harness between body and gas tank; $405 repair. (LaPorte, Indiana).

➢ 2011 HONDA Accord - two incidents over $3,000 in combined damage.

➢ 2010 HONDA Pilot. $1200 in damage.

➢ 2009 HONDA Odyssey - Wiring damage.

➢ 2009 HONDA Odyssey - Sensor wiring damage; $482.58 in repairs.

➢ 2009 HONDA Accord - Emission valve to the gas tank, requiring tank replacement - total damage $2,800.

➢ 2007 HONDA Ridgeline - At 60,000 miles rodents eaten wires and it costed $800 at the dealer. (Florida).

52. Complaints on the NHTSA website reveal that many consumers have experienced wire damage as a result of rodents and other animals chewing the soy-based portions of the wiring in multiple Honda models.

53. The consumer complaints to NHTSA are evidence of a widespread problem. Representative examples of complaints on the NHTSA website regarding the Class Vehicles are included below (with emphasis supplied in capitalized bold, underlined letters):

> ➢ WHILE DRIVING TO CHICAGO (2 HOURS AWAY) WITH MY WIFE AND 11 YEAR OLD MY MAINTENANCE MINDER LIGHT CAME ON TO TELL ME IT WAS TIME TO GET AN OIL CHANGE. SINCE IT WAS A SUNDAY I COULDN'T TAKE IT IN. I COULDN'T MAKE AN APPOINTMENT UNTIL 7/16 TO GET IN FOR AN OIL CHANGE. ON 7/16 I SAT IN MY CAR TO GO HOME, BUT MY DASH LIGHTS WERE ALL LIT UP. BRAKES, ELECTRIC STEERING, ABS, CHECK ENGINE, MY SPEEDOMETER WASN'T WORKING AND MANY MORE LIGHTS REMAINED ON. I CALLED THE DEALER AND THEY TOLD ME IT WAS SAFE TO DRIVE IT OVER TO THEM ALTHOUGH I HEARD A GRINDING SOUND, MY BRAKES WERE SOFT AND MY STEERING WHEEL WAS VERY STIFF. I WENT VERY SLOW SINCE MY SPEEDOMETER OR MILEAGE WASN'T WORKING AT ALL. THE NEXT MORNING MY DEALER CALLED AND CLAIMED THAT A RODENT WAS THE CULPRIT WHO CHEWED ON SOME MAIN WIRING HARNESS OF THE ENTIRE CAR. I FIND THIS HARD TO BELIEVE BECAUSE WHY DIDN'T IT HAPPEN AFTER THE OIL LIGHT CAME 2 DAYS BEFORE? WHY DIDN'T MY WIFE'S SUV GET AFFECTED BY THIS? THIS IS A HUGE QUALITY CONTROL ISSUE THAT HONDA NEEDS TO FIX. WHAT WOULD HAVE HAPPENED IF ALL OF THESE LIGHTS CAME ON WHILE I WAS DRIVING MY FAMILY ON THE HIGHWAY? *TR

> ➢ THE CONTACT OWNS A 2014 HONDA CR-V. WHEN THE VEHICLE WAS STARTED, THERE WAS AN ABNORMAL NOISE COMING FROM THE FRONT END OF THE VEHICLE. IN ADDITION, THE CONTACT STATED THAT THE VEHICLE FAILED TO ACCELERATE OVER 20 MPH AND ALL THE WARNING LIGHTS ON THE INSTRUMENT PANEL ILLUMINATED. THE VEHICLE WAS TAKEN TO A DEALER. THE TECHNICIAN STATED THAT RODENTS WERE CHEWING THE HARNESS WIRES. THE VEHICLE WAS REPAIRED; HOWEVER,

THE FAILURE RECURRED. THE VEHICLE WAS TAKEN BACK TO THE DEALER ON FEBRUARY 4, 2014 WHERE IT WAS DIAGNOSED THAT THE CRANK SENSOR AND HARNESS WIRES NEEDED TO BE REPLACED. THE VEHICLE WAS REPAIRED AND THE MANUFACTURER WAS NOT NOTIFIED. THE FAILURE MILEAGE WAS 3,000.

## **CLASS ACTION ALLEGATIONS**

54. Plaintiffs bring this lawsuit on behalf of themselves and all similarly situated individuals and entities, pursuant to Federal Rule of Civil Procedure 23(a), 23(b)(2) and 23(b)(3). Specifically, the nationwide class (the "Nationwide Class") consists of "[a]ll persons or entities who (a) currently own or lease a Class Vehicle with soy-based components; and/or (b) previously owned or leased a Class Vehicle with soy-based components and can be identified as having incurred out-of-pocket expenses related to soy-based component defects."

55. In the alternative class to the Nationwide Class, and pursuant to Federal Rule of Civil Procedure 23(c), Plaintiffs seek to represent the following state sub-class (the "Kansas Sub-Class") only in the event that the Court declines to certify the Nationwide Class above "[a]ll persons or entities in Kansas who (a) currently own or lease a Class Vehicle with soy-based components; and/or (b) previously owned or leased a Class Vehicle with soy-based components and can be identified as having incurred out-of-pocket expenses related to soy-based component defects."

56. All Classes are collectively referred to as the "Class." Excluded from the Class are Honda, its affiliates, subsidiaries, parents, successors, predecessors, any entity in

-18-

which Honda or its parents have a controlling interest; Honda's current and former employees, officers and directors; the Judge(s) and/or Magistrate(s) assigned to this case; any person who properly obtains exclusion from the Class; any person whose claims have been finally adjudicated on the merits or otherwise released; and the parties' counsel in this litigation. Plaintiffs reserve the right to modify, change, or expand the Class definitions based upon discovery and further investigation.

57. **Numerosity**: Upon information and belief, the Class is so numerous that joinder of all members is impracticable. While the exact number and identities of individual members of the Class are unknown at this time, such information being in the sole possession of Honda and obtainable by Plaintiffs only through the discovery process, plaintiffs believe, and on that basis allege, that thousands of Class members have been subjected to the conduct by Honda herein alleged.

58. **Existence and Predominance of Common Questions of Fact and Law**: Common questions of law and fact exists as to all members of the Class. These questions predominate over the questions affecting individual Class members. These common legal and factual questions include, but are not limited to the following:

a) Whether Honda engaged in the conduct alleged herein;

b) Whether Honda designed, advertised, marketed, distributed, leased, sold, or otherwise placed Class Vehicles into the stream of commerce in the United States;

c) Whether the Class Vehicles are defective in that they were sold with soy-based wiring insulation and other soy-based wiring, parts, or components;

d) Whether Honda knew of the Defect but failed to disclose the problem and its consequences to its consumers;

e) Whether a reasonable consumer would consider the Defect or its consequences to be material;

f) Whether the Defect causes the vehicle to malfunction;

g) Whether Honda's conduct violates state consumer protection statutes;

h) Whether Honda's conduct violates state and federal warranty laws and other laws asserted herein;

i) Whether Plaintiffs and the other Class members overpaid for their Class Vehicles as a result of the Defect alleged herein;

j) Whether plaintiffs and the other Class members are entitled to equitable relief, including, but not limited to, restitution or injunctive relief; and

k) Whether Plaintiffs and the other Class members are entitled to damages and other monetary relief and, if so, in what amount.

59. **Typicality**: All of Plaintiffs' claims are typical of the claims of the Class since Plaintiffs and all Class members were injured in the same manner by Honda's uniform course of conduct described herein. Plaintiffs and all Class members have the same claims against Honda relating to the conduct alleged herein, and the same events giving rise to Plaintiffs' claims for relief are identical to those giving rise to the claims of all

Class members. Plaintiffs and all Class members sustained monetary and economic injuries including, but not limited to, ascertainable losses arising out of Honda's wrongful conduct as described herein. Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all absent Class members.

60. **<u>Adequacy</u>**: Plaintiffs are adequate representatives for the Class because their interests do not conflict with the interests of the Class that they seek to represent. Plaintiffs have also retained counsel competent and highly experienced in complex class action litigation—including consumer fraud class action cases—and automobile defect cases, and counsel intends to prosecute this action vigorously. The interests of the Class will be fairly and adequately protected by Plaintiffs and their counsel.

61. **<u>Superiority</u>**: A class action is superior to all other available means of fair and efficient adjudication of the claims of Plaintiffs and all Class members. The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Honda's conduct. It would be virtually impossible for members of the Class individually to redress effectively the wrongs done to them by Honda. Even if Class members could afford such individual litigation, the court system could not. Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, an economy of scale, and comprehensive supervision by a single

court. Upon information and belief, members of the Class can be readily identified and notified based on the records (including databases, e-mails, etc.) Honda maintains regarding sales and leases of Class Vehicles. Plaintiffs know of no difficulty to be encountered in the management of this action as a class action.

62. Honda has acted or refused to act on grounds generally applicable to Plaintiffs and the other members of the Class, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Class as a whole.

63. Given that Honda has engaged in a common course of conduct as to Plaintiffs and the Class, similar or identical injuries and common law and statutory violations are involved and common questions far outweigh any potential individual questions.

64. The Class is defined in terms of objective characteristics and common transactional facts. Namely, the purchase or lease of Class Vehicles containing the soy-based wiring Defect that resulted in rodent damage to Class Vehicles' electrical wiring and systems. Class membership will be readily ascertainable from Honda's business records.

65. Plaintiffs reserve the right to revise the above Class definitions based on facts adduced in discovery.

66. All claims advanced below on behalf of the state sub-classes are pled in the alternative to the claims advanced on behalf of the Nationwide Class.

## CAUSES OF ACTION

### COUNT I
### VIOLATION OF THE MAGNUSSON-MOSS
### WARRANTY ACT, 15 U.S.C. §§ 2301, *et seq.* ("MMWA")
### (On behalf of the Nationwide Class and Kansas Sub-Class)

67. Plaintiffs repeat and reallege the allegations above as if fully set forth herein.

68. Plaintiffs and Class members are "consumers" within the meaning of the MMWA. 15 U.S.C. § 2301(3).

69. The Class Vehicles are "consumer products" within the meaning of the MMWA. 15 U.S.C. § 2301(1).

70. Honda is a "supplier" and "warrantor" within the meaning of the MMWA. 15 U.S.C. § 2301(4)-(5).

71. Section 2310(d) of the MMWA provides a cause of action for consumers who are harmed by the failure of a warrantor to comply with a written or implied warranty.

72. Honda's express warranties are written warranties within the meaning of Section 2301(6) of the MMWA. The Class vehicles' implied warranties are accounted for under Section 2301(7) of the MMWA, which warranties Honda cannot disclaim under the MMWA, when it fails to provide merchantable goods.

73. As set forth herein, Honda breached its warranties with Plaintiffs and Class members.

74. Additionally, 15 U.S.C. § 2304(d) provides, in pertinent part, the following:

[T]he warrantor may not assess the consumer for any costs the warrantor or his representatives incur in connection with the required remedy of a

-23-

warranted consumer product. . . . [I]f any incidental expenses are incurred because the remedy is not made within a reasonable time or because the warrantor imposed an unreasonable duty upon the consumer as a condition of securing remedy, then the consumer shall be entitled to recover reasonable incidental expenses which are so incurred in any action against the warrantor.

*Id.*

75. Class Vehicles share a common Defect in that they contain soy-based wiring and wiring components that attract rodents and other pests and make Class Vehicles predisposed to damage in the form of chewed and gnawed wires.

76. Despite demands by Plaintiffs and the Class for Honda to pay the expenses associated with diagnosing and repairing the defective soy-based wires and damaged wiring systems, Honda has refused to do so.

77. Honda breached these specific warranties as described in more detail above and also breached them generally by manufacturing soy-based insulated wiring systems that are defective in design, materials, and workmanship and are likely to fail due to damage caused by rodents; by selling defective soy-based insulated wiring systems not in merchantable condition, which present an unreasonable risk of failure and are unfit for the ordinary purpose; by refusing to repair or replace, free of charge, the defective soy-based insulated wiring systems or any of their component parts; by forcing consumers to pay for out-of-pocket costs for diagnostics, labor, repair, and replacement parts; and by not curing the Defect once it was known and identified.

78. Plaintiffs' and Class members' interactions with Honda suffice to create privity of contract between Plaintiffs and Class members, on the one hand, and Honda, on the other hand; however, privity of contract need not be established, nor is it required, because Plaintiffs and Class members are intended third-party beneficiaries of contracts between Honda and its authorized dealers, and specifically, of Honda's implied warranties. Honda's dealers are intermediaries between Honda and consumers that sell Class Vehicles to consumers and are not consumers of Class Vehicles, and therefore, they have no rights against Honda with respect to Plaintiffs' and Class members' purchases or leases of Class Vehicles. Honda's warranties were designed for the benefit of consumers who purchase(d) or lease(d) Class Vehicles.

79. As a direct and proximate result of Honda's breach of implied and express warranties pursuant to 15 U.S.C. § 2310(d)(1), Plaintiffs and Class members have suffered damages in an amount to be proven at trial.

80. Plaintiffs and the other Class members would suffer economic hardship if they returned their Class Vehicles but did not receive the return of all payments made by them. Because Honda is refusing to acknowledge any revocation of acceptance and return immediately any payments made, Plaintiffs and the other Class members have not re-accepted their Class Vehicles by retaining them.

81. The amount in controversy of Plaintiffs' individual claims meets or exceeds the sum of $25. The amount in controversy of this action exceeds the sum of $50,000,

exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit.

82. Plaintiffs and Class members are entitled to recover damages as a result of Honda's breach of warranties.

83. Plaintiffs and Class members are also entitled to seek costs and expenses, including attorneys' fees, under the MMWA. 15 U.S.C. § 2310(d)(2).

<u>COUNT II</u>
**BREACH OF EXPRESS WARRANTY**
**(On Behalf of the Nationwide Class)**

84. Plaintiffs repeat and reallege the allegations contained above as if fully set forth herein.

85. Honda is a "merchant" as defined under the Uniform Commercial Code ("UCC").

86. The Class Vehicles are "goods" as defined under the UCC.

87. Honda expressly warranted that the Class Vehicles were of high quality and, at a minimum, would actually work properly. Honda also expressly warranted that they would repair and/or replace defects in material and/or workmanship that occurred during the Warranty period free of charge.

88. Honda breached its warranty by selling and leasing to Plaintiffs and Class members Class Vehicles with soy-based wiring which Honda knew or knows attracts rodents and other pests and makes wiring in the Class Vehicles prone to damage, causing Class Vehicles to fail prematurely and/or fail to function properly.

-26-

89. Honda further breached the Warranty by failing to repair and/or replace Plaintiffs' and other Class members' defective soy-based wiring components or parts when the defective wiring systems failed during the Warranty period.

90. Plaintiffs purchased vehicles subject to Honda's Warranty. While Plaintiffs' Class Vehicles were still covered by the Warranty, the soy-based material comprising the electrical wiring in Plaintiffs' Class Vehicles attracted rodents or other animals that chewed through the wiring, leaving the vehicle partially or fully inoperable. Pursuant to the terms of the Warranty, Plaintiffs brought their vehicle to a Honda authorized service center and requested that such repairs be completed under the Warranty. Despite these requests, Honda denied their warranty claims on the basis that the damage was caused by "other," "outside," or "environmental" forces, which Honda contends are not covered under the Warranty. Honda knew of the aforesaid Defect and continues to have knowledge of the Defect.

91. This intentional failure to disclose the known Defect is malicious, and it was carried out with willful and wanton disregard for the rights and economic interest of Plaintiffs and Class members.

92. As a result of Honda's actions, Plaintiffs and Class members have suffered economic damages, including, but not limited to, costly repairs, loss of vehicle use, substantial loss in value and resale value of the vehicles, and other related damages.

93. Honda's attempt to disclaim or limit its express warranties vis-à-vis consumers is unconscionable and unenforceable under the circumstances here. Specifically, Honda's

Warranty limitation is unenforceable because it knowingly sold a defective product without informing consumers about the Defect.

94. Furthermore, the time limits contained in Honda's Warranty period are also unconscionable and inadequate to protect Plaintiffs and members of the Class. Among other things, plaintiffs and Class members have had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Honda. A gross disparity in bargaining power exists between Honda and Class members, and Honda knew or should have known that the Class Vehicles were defective at the time of sale or lease and would fail well before their useful lives. Furthermore, consumers had no way of knowing of the concealed Defect.

95. Plaintiffs and Class members have complied with all obligations under the Warranty or otherwise have been excused from performance of said obligations as a result of Honda's conduct described herein.

96. Honda was provided notice of these issues by complaints lodged by consumers with NHTSA and elsewhere—which vehicle manufacturers like Honda routinely monitor—before or within a reasonable amount of time after the allegations of the Defect became public.

<u>COUNT III</u>
**BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY**
**(On Behalf of the Nationwide Class)**

97. Plaintiffs repeat and reallege the allegations contained above as if fully set forth herein.

98. Honda is a "merchant" as defined under the UCC.

99. The Class vehicles are "goods" as defined under the UCC.

100.    Honda impliedly warranted that the Class Vehicles were of a merchantable quality.

101.    Honda breached the implied warranty of merchantability because the Class Vehicles were not of a merchantable quality due to the defective soy-based materials and parts and the associated problems caused by the Defect.

102.    Plaintiffs' and Class members' interactions with Honda suffice to create privity of contract between Plaintiffs and Class members, on the one hand, and Honda, on the other hand; however, privity of contract need not be established nor is it required because Plaintiffs and Class members are intended third-party beneficiaries of contracts between Honda and its authorized dealers, and specifically, of Honda's implied warranties. Honda's dealers are intermediaries between Honda and consumers that sell Class Vehicles to consumers and are not consumers of Class Vehicles, and therefore, they have no rights against Honda with respect to Plaintiffs' and Class members' purchases or leases of Class Vehicles. Honda's warranties were designed for the benefit of consumers who purchase(d) or lease(d) Class Vehicles.

103.    As a direct and proximate result of the breach of said warranties, Plaintiffs and Class members were injured and are entitled to damages.

104.    Honda's attempt to disclaim or limit the implied warranty of merchantability vis-à-vis consumers is unconscionable and unenforceable here.

Specifically, Honda's Warranty limitations are unenforceable because Honda knowingly

sold a defective product without informing consumers about the Defect.

105.    Furthermore, the time limits contained in Honda's warranty period were

also unconscionable and inadequate to protect Plaintiffs and members of the Class.

Among other things, Plaintiffs and members of the Class had no meaningful choice in

determining these time limitations, the terms of which unreasonably favored Honda. A

gross disparity in bargaining power exists between Honda and Class members, and

Honda knew or should have known that the Class Vehicles were defective at the time of

sale and that the soy-based insulated wiring systems would fail well before their useful

lives.

106.    Plaintiffs and Class members have complied with all obligations under the

warranty or otherwise have been excused from performance of said obligations as a

result of Honda's conduct described herein.

107.    Honda was provided notice of these issues by complaints lodged by

consumers with NHTSA and elsewhere—which vehicle manufacturers like Honda

routinely monitor—before or within a reasonable amount of time after the allegations of

the Defect became public.

## COUNT IV
### VIOLATIONS OF THE CALIFORNIA UNFAIR COMPETITION LAW
#### CAL. BUS. & PROF. CODE § 17200, *et seq.* ("UCL")
#### (On Behalf of the Nationwide Class)

108.    Plaintiffs repeat and reallege the allegations above as if fully set forth herein.

109.    The UCL broadly prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising." CAL BUS. & PROF. CODE § 17200.

110.    A business act or practice is "unfair" under the UCL if the reasons, justifications, and motives of the alleged wrongdoer are outweighed by the gravity of the harm to the alleged victims.

111.    Honda has engaged in "unfair" business practices and/or acts by falsely representing the qualities of its express and implied warranties for Class Vehicles; by misrepresenting the workmanship of its Class Vehicles; by failing to disclose the Defect to consumers; and by refusing to provide warranty coverage for the Defect.

112.    The acts and practices alleged herein are unfair because they caused Plaintiffs and Class members—and reasonable consumers like them—to believe that Honda was offering something of value that did not, in fact, exist. Honda intended for Plaintiffs and Class members to rely on its representations. As a result, purchasers and lessees, including Plaintiffs, reasonably perceived that they were receiving Class Vehicles

with certain benefits. This perception induced reasonable purchasers to purchase or lease Class Vehicles which they would not otherwise have done had they known the truth.

113.    The gravity of the harm to members of the Class resulting from these unfair acts and practices outweighs any conceivable reasons, justifications, and/or motives of Honda for engaging in such deceptive acts and practices. By committing the acts and practices alleged above, Honda engaged in unfair business practices within the meaning of the UCL.

114.    A business act or practice is also "fraudulent" under the UCL if it is likely to deceive members of the consuming public.

115.    Honda engaged in a uniform course of conduct which was intended to, and did in fact, deceive Plaintiffs and Class members and induce them into buying Class Vehicles. Honda's course of conduct and marketing practices were fraudulent within the meaning of the UCL because they deceived Plaintiffs and were likely to deceive members of the Class into believing that they were entitled to a benefit that did not, in fact, exist. Honda's misrepresentations are likely to deceive and have deceived the public.

116.    A business act or practice is also "unlawful" under the UCL if it violates any other law or regulation. Honda has violated the MMWA and other laws set forth herein.

117.    Honda has engaged in unfair competition and unfair, unlawful, or fraudulent business practices by the conduct, statements, and omissions described above and by knowingly and intentionally concealing from Plaintiffs and Class members that

the Class Vehicles suffer from the Defect (and the costs, risks, and diminished value of the Class Vehicles as a result of this problem). Honda should have disclosed the Defect and this information because Honda was in a superior position to know the true facts related to the Defect, and Plaintiffs and Class members could not reasonably be expected to learn or discover the true facts related to the Defect. Plaintiffs and Class members relied upon Honda's express representations and promises regarding the workmanship of, and warranties for, the Class Vehicles, believed them to be true, and would not have agreed to purchase or lease Class Vehicles had they known the truth about the Defect.

118.   The omissions and acts of concealment, fraud, and deceit by Honda pertained to information that was material to Plaintiffs and the Class members, as it would have been to all reasonable consumers.

119.   In failing to disclose that Class Vehicles contain defective soy-based wiring that attracts rodents and other pests (the true nature of the quality and workmanship of Class Vehicles) and suppressing other material facts from Plaintiffs and Class members, Honda breached its duties to disclose these facts, violated the UCL, and caused injuries to Plaintiffs and Class members.

120.   The fraudulent or unfair conduct alleged herein was carried out by a corporation whose principle place of business is in California and the acts complained of herein took place in and/or originated in the state of California.

121.    The injuries suffered by Plaintiffs and the Class members greatly outweigh any potential countervailing benefit to consumers or to competition. Also, the injuries suffered by Plaintiffs and the Class members could not have been reasonably avoided.

122.    Through its fraudulent, unfair, and unlawful acts and practices, Honda has improperly obtained money from Plaintiffs and the Class.

123.    Plaintiffs seek to enjoin further unlawful, unfair and/or fraudulent acts or practices by Honda relating to the soy-wiring Defect in Class Vehicles and from violating the UCL in future by selling Class Vehicles with the soy wiring Defect.

124.    Plaintiffs also seek to obtain restitutionary disgorgement of all monies and revenues generated as a result of such practices, require notice of this dangerous condition be provided to the Class, and all other relief allowed under CAL. BUS. & PROF. Code § 17200.

**<u>COUNT V</u>**
**VIOLATION OF THE CALIFORNIA**
**CONSUMERS LEGAL REMEDIES ACT**
**(CAL. BUS. & PROF. CODE §§ 1750, *et seq.*) ("CLRA")**
**(On Behalf of the Nationwide Class)**

125.    Plaintiffs repeat and reallege the allegations above as if fully set forth herein.

126.    The CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer . . . ." CAL. CIV. CODE § 1770.

127.    Honda Defendants are "persons" as defined by CAL. CIV. CODE §
1761(c).

128.    The Class vehicles are "goods" as defined by CAL. CIV. CODE § 1761(a).

129.    Plaintiff and Class members are consumers as defined by CAL. CIV.
CODE         § 1761(d).

130.    Honda made numerous misrepresentations concerning the Class Vehicles
specifications that were misleading, including marketing and advertising the
workmanship of Class Vehicles and the nature and extent of Honda's Warranty.

131.    In purchasing or leasing Class Vehicles, Plaintiff and Class members were
deceived by Honda's failure to disclose that the Class Vehicles contain a soy-wiring
Defect that attracts rodents and results in expensive rodent damage, for which Honda
refused to provide coverage under its express or implied warranties.

132.    Honda's conduct is in violation of several sections of CAL. CIV. CODE §
1770:

- (a)(2): misrepresenting the source, sponsorship, approval, or certification of
  goods and services;

- (a)(5): representing that goods or services have sponsorship, approval,
  characteristics, ingredients, uses, benefits, or qualities which they do not
  have;

- (a)(7): representing that goods are of a particular standard, quality, or grade,
  if they are another;

- (a)(9): advertising goods with the intent not to sell them as advertised; and

- (a)(16), representing that goods have been supplied in accordance with a previous representation when they have not.

133.    Honda knew that Class Vehicles contain the soy-wiring Defect and are not suitable for their intended use.

134.    Honda was under a duty to Plaintiff and Class members to disclose the defective nature of the Class Vehicles for at least three reasons:

a.  Honda was in a superior position to know the true state of facts about the safety defect and associated repair costs in the Class Vehicles and soy-based wiring and wiring insulation;

b.  Plaintiffs and the Class members could not reasonably have been expected to learn or discover that the Class Vehicles have a defect that affects operability of Class Vehicles and creates safety concerns until manifestation of the Defect; and

c.  Honda knew that Plaintiffs and Class members could not reasonably have been expected to learn or discover the Defect until manifestation of the Defect.

135.    In failing to disclose the soy-wiring Defect in Class Vehicles, Honda has knowingly and intentionally concealed material facts and breached their duty not to do so.

136.    The facts concealed or not disclosed by Honda to Plaintiffs and Class members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease Class Vehicles or pay a lesser price. Had Plaintiffs and the Class known about the defective nature of the Class vehicles, they would not have purchase or leased the Class Vehicles or they would have paid much less to do so.

137.    As a direct and proximate result of Honda's unfair and deceptive acts or practices, Plaintiffs and Class members have been harmed.

138.    Prior to the filing of this Complaint, Plaintiffs sent Honda a CLRA notice letter providing the notice required by California Civil Code § 1782(a). Plaintiffs sent the letter via certified mail, return receipt requested, to Honda's corporate headquarters in Torrance, California, advising Honda that it is in violation of the CLRA and must correct, replace, or otherwise rectify the goods and/or services alleged to be in violation of § 1770. Honda was further advised that in the event the relief requested has not been provided within 30 days, Plaintiffs will amend their Complaint to include a request for monetary damages pursuant to the CLRA. A true and correct copy of Plaintiffs' letter is attached hereto as Exhibit 2. If Honda does not correct, replace, or otherwise rectify the goods and/or services alleged in either Plaintiffs' letter or this Complaint within the statutorily proscribed 30-day period, Plaintiffs will amend their Complaint to seek both injunctive relief and monetary damages against Honda pursuant to the CLRA, California Civil Code §§ 1781 and 1782.

## COUNT VI
## VIOLATION OF THE SONG-BEVERLY CONSUMER WARRANTY ACT
## FOR BREACH OF EXPRESS WARRANTIES
### CAL. CIV. CODE §§ 1791.2 & 1793.2(D) ("SBCWA")
### (On Behalf of the Nationwide Class)

139.    Plaintiffs repeat and reallege the allegations above as if fully set forth herein.

140.    Plaintiff and Class members are "buyers" within the meaning of the SBCWA. *See* CAL. CIV. CODE § 1791(b).

141.    The Class Vehicles are "consumer goods" within the meaning of CAL. CIV. CODE § 1791(a).

142.    Honda is a "manufacturer" within the meaning of CAL. CIV. CODE § 1791(j).

143.    Plaintiff and Class members bought or leased automobiles manufactured by Honda.

144.    Honda made express warranties to Plaintiff and Class members within the meaning of CAL. CIV. CODE §§ 1791.2 and 1793.2 as set forth herein.

145.    As set forth herein in detail, Class vehicles are inherently defective in that they contain electrical wiring systems that are made with, or consist of, soy-based materials that attract rodents and other pests which chew or eat the wiring, causing partial or total failure in Class Vehicles. Contrary to Honda's position, the Defect is covered under its Warranty.

146.    The Defect jeopardizes the safety of drivers and passengers of Class Vehicles, and other drivers on the road, and substantially impairs the use, value, and safety of Class Vehicles to reasonable consumers like Plaintiff and Class members.

147.    As a result of Honda's breach of its express warranties, Plaintiff and Class members received goods containing a dangerous condition that substantially impairs the value of the goods to Plaintiff and Class members. Plaintiff and other Class members have been damaged as a result of the diminished value of Honda's products caused by the Defect, the products' malfunctioning due to the Defect, and the non-use of their Class Vehicles.

148.    Pursuant to CAL. CIV. CODE §§ 1793.2 and 1794, Plaintiff and other Class members are entitled to damages and other legal and equitable relief including, at their election, the purchase price of or a buyback of their Honda vehicles or the overpayment or diminution in value of their Class Vehicles.

149.    Pursuant to CAL. CIV. CODE § 1794, Plaintiff and Class members are also entitled to costs and reasonable attorneys' fees.

## COUNT VII
## VIOLATION OF THE SONG-BEVERLY CONSUMER WARRANTY ACT FOR BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY
### CAL. CIV. CODE §§ 1791.1 & 1792 ("SBCWA")
### (On Behalf of the Nationwide Class)

150.    Plaintiffs repeat and reallege the allegations above as if fully set forth herein.

151.    Plaintiff and Class members are "buyers" within the meaning of the

SBCWA. *See* CAL. CIV. CODE § 1791(b).

152.    The Class Vehicles are "consumer goods" within the meaning of CAL.

CIV. CODE § 1791(a).

153.    Honda is a "manufacturer" within the meaning of CAL. CIV. CODE §

1791(j).

154.    Honda implicitly warranted to Plaintiff and the other Class members that

its Class Vehicles were "merchantable" within the meaning of CAL. CIV. CODE §§

1791.1(a) & 1792.

155.    In reality, the Class Vehicles do not possess those qualities that a buyer

would reasonably expect.

156.    "Implied warranty of merchantability" or "implied warranty that goods are

merchantable" means that the consumer goods meet each of the following: (1) pass

without objection in the trade under the contract description; (2) are fit for the ordinary

purpose for which such goods are used; (3) are adequately contained, packaged, and

labeled; and (4) conform to the promises or affirmation of fact made on the container or

label. CAL. CIV. CODE § 1791.1(a).

157.    The Class Vehicles are not suitable for the market and would not pass

without objection in the automotive industry and market because of the soy-wiring

Defect in Class Vehicles' electrical wiring systems. Specifically, the soy-based material

used in Class Vehicle wiring, wiring insulation, and/or wiring harnesses fails to protect

vital vehicular components from being eaten by rodents. Instead, it causes Class Vehicles to fail due to wire damage caused by rodents that are attracted to the soy-based materials in the wiring products.

158.    The soy-based material used in Class Vehicles' wiring systems makes the Class Vehicles unsuitable for safe driving. Class Vehicles are not in merchantable condition and are therefore not fit for their ordinary purposes.

159.    Furthermore, Class Vehicles are not adequately labeled because the labeling fails to disclose the soy-wiring Defect.

160.    Honda breached the implied warranty of merchantability by manufacturing and selling Class Vehicles containing the soy-wiring Defect. Furthermore, the Defect has caused Plaintiffs and other Class members to not receive the benefit of their bargain and have caused Class Vehicles to depreciate in value.

161.    As a direct and proximate result of Honda's breach of the implied warranty of merchantability, Plaintiffs and the other Class members received goods whose defective condition substantially impairs their value to Plaintiffs and the other Class members. Plaintiffs and the other Class members have been damaged as a result of the diminished value of Honda's products, the products' malfunctioning, and the non-use of their Class Vehicles.

162.    Plaintiffs and the other Class members have had sufficient direct dealings with either Honda or its agents (*e.g.*, dealerships and technical support) to establish privity of contract between Honda, on one hand, and Plaintiffs and each of the Class

members, on the other hand. Nonetheless, privity is not required here because Plaintiffs and each of the other Class members are intended third-party beneficiaries of contracts between Honda and its dealers, and specifically, of Honda's implied warranties. The dealers were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles. The warranty assignments were designed for, and intended to benefit, the consumers only.

163.    Pursuant to CAL. CIV. CODE §§ 1791.1(d) and 1794, Plaintiffs and Class members are entitled to damages and other legal and equitable relief, including, at their election, the purchase price of, or a buyback of, their Honda vehicles or the overpayment or diminution in value of their Class Vehicles.

164.    Pursuant to CAL. CIV. CODE § 1794, Plaintiffs and Class members are also entitled to costs and reasonable attorneys' fees.

## <u>COUNT VIII</u>
### BREACH OF EXPRESS WARRANTY
### CAL. COM. CODE § 2313
### (On Behalf of the Nationwide Class)

165.    Plaintiffs repeat and reallege the allegation above as if fully set forth herein.

166.    Honda is and was at all relevant times a merchant with respect to motor vehicles. CAL. COM. CODE § 2104.

167.    Pursuant to CAL. COM. CODE § 2313(1)(a), "[e]xpress warranties by the seller are created" by "[a]ny affirmation of fact or promise made by the seller to the

buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise."

168.    In its Warranty and in advertisements, brochures, and through other statements in the media, Honda expressly warranted that it would repair or replace defects in material or workmanship free of charge if they became apparent during the warranty period.

169.    Honda's Warranty, as well as advertisements, brochures, and other statements in the media regarding Class Vehicles, formed the basis of the bargain that was reached when Plaintiffs and the other Class members purchased or leased their Class Vehicles.

170.    Honda breached the express warranty to repair and adjust to correct defects in materials and workmanship of any part supplied by Honda. Honda has not repaired or adjusted and has been unable to repair or adjust the Class Vehicles' materials and workmanship defects, namely the soy-based electrical wiring parts and components.

171.    At the time of selling or leasing Class Vehicles, Honda did not provide Class Vehicles that conformed to its express warranties.

172.    Furthermore, the warranty of repair and/or adjustments to defective parts fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs and the other Class members whole because Honda has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

-43-

173.     Accordingly, recovery by Plaintiffs and the other Class members is not limited to the warranty of repair or adjustments to parts defective in materials or workmanship, and Plaintiffs, individually and on behalf of the other Class members, seek all remedies as allowed by law.

174.     Also, as alleged in more detail herein, at the time that Honda warranted and sold the Class Vehicles it knew that the Class Vehicles did not conform to the warranties and were inherently defective, and Honda wrongfully and fraudulently misrepresented and/or concealed material facts regarding its Class Vehicles. Plaintiff and the other Class members were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

175.     Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved through the limited remedy of "replacement or adjustments," as many incidental and consequential damages have already been suffered due to Honda's fraudulent conduct as alleged herein and due to its failure and/or continued failure to provide such limited remedy within a reasonable time. Any limitation of Plaintiffs' and the other Class members' remedies would be insufficient to make Plaintiffs and the other Class members whole.

176.     Honda was provided notice of these issues by numerous complaints filed against it, including this complaint, and by numerous letters and communications sent by Plaintiffs and the other Class members before or within a reasonable amount of time after the allegations of the Defect became public.

-44-

177.   As a direct and proximate result of Honda's breach of express warranties, Plaintiffs and the other Class members have been damaged in an amount to be determined at trial.

## COUNT IX
## BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY
### CAL. COM. CODE § 2314
### (On Behalf of the Nationwide Class)

178.   Plaintiffs repeat and reallege the allegations above as if fully set forth herein.

179.   Honda is and was at all relevant times a merchant with respect to motor vehicles. CAL. COM. CODE § 2104.

180.   A warranty that the Class Vehicles were in merchantable condition was implied by law, pursuant to CAL. COM. CODE § 2314.

181.   The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and not fit for the ordinary purpose for which cars are used. Specifically, the Class Vehicles suffer from an inherent Defect, as alleged herein.

182.   Honda was provided notice of these issues by numerous complaints filed against it, including this complaint, and by numerous individual letters, telephone calls, and other communications sent by Plaintiffs and other Class members before or within a reasonable amount of time after the allegations of the Defect became public.

183.   Plaintiffs and the other Class members have had sufficient direct dealings with either Honda or its agents (*e.g.*, dealerships) to establish privity of contract between

Honda, on the one hand, and Plaintiffs and the other Class members, on the other hand. Notwithstanding this, privity is not required in this case because Plaintiffs and the other Class members are intended third-party beneficiaries of contracts between Honda and its dealers. Specifically, they are the intended beneficiaries of Honda's implied warranties. The dealers were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles. The warranty agreements were designed for and intended to benefit the ultimate consumers only. Finally, privity is also not required because Plaintiffs' and the other Class members' Class Vehicles are dangerous instrumentalities due to the aforementioned Defect and nonconformities.

184.    As a direct and proximate result of Honda's breach of the warranty of merchantability, Plaintiffs and the other Class members have been damaged in an amount to be proven at trial.

**COUNT X**
**VIOLATION OF THE KANSAS**
**CONSUMER PROTECTION ACT ("KCPA")**
**KAN. STAT. ANN. § 50-617, et seq.**
**(On Behalf of the Kansas Sub-Class)**

185.    Plaintiffs repeat and reallege the allegations above as if fully set forth herein.

186.    Plaintiffs are "consumers" within the meaning of the KCPA.

187.    Honda is a "person" within the meaning of the KCPA for all purposes therein and Class Vehicles are "property" under the KCPA.

188.    The advertising, offering for sale or lease, and sale or lease of Class Vehicles constitute "consumer transactions" under the KCPA.

189.    In advertising and selling or leasing Class Vehicles containing the Defect, Honda violated, and continues to violate, the KCPA by engaging in the following unconscionable, false, misleading, or deceptive act(s) or practice(s), which were false or had the capacity to deceive:

a.  making a false or misleading representation, knowingly or with reason to know, as to the source, sponsorship, approval, or certification of the subject of a consumer transaction;

b.  making a false representation, knowingly or with reason to know, as to characteristics, ingredients, uses, benefits, alterations, or quantities of the subject of a consumer transaction;

c.  representing, knowingly or with reason to know, that the subject of a consumer transaction is of a particular standard, style or model, if it is of another; and

d.  advertising knowingly or with reason to know, the subject of a consumer transaction with intent not to sell as advertised.

190.    Defendant has also violated the KCPA by committing an unfair or deceptive trade practice as defined in KAN. STAT. ANN. § 50-626.

-47-

191.    By engaging in the foregoing conduct, Honda took advantage of Plaintiffs' lack of knowledge to an unfair degree.

192.    Plaintiffs and Class members sustained actual damages because they purchased or leased defective Class Vehicles and essentially received less than what they were entitled to receive from the purchase or lease of Class Vehicles, as well as incurring out-of-pocket costs and labor costs to attempt to remedy the Defect.

193.    Plaintiffs and Class members relied upon Honda's misrepresentations and/or omissions in determining to purchase or lease defective Class Vehicles.

194.    Had Honda not engaged in the false, misleading, or deceptive conduct described herein, Plaintiffs  and Class members would not have purchased or leased their Class Vehicles (or would have paid significantly less for them) and would not have incurred out-of-pocket costs and labor costs to attempt to remedy the Defect.

195.    By reason of the unlawful acts engaged in by Honda, and as a direct and proximate result thereof, Plaintiffs and Class members have suffered ascertainable loss and damages.

196.    Honda's sale and lease of defective Class Vehicles, coupled with Honda's unconscionable and deceptive acts and practices in connection therewith, was and is reckless, shows spite and ill will, and demonstrates a reckless indifference to the interests of consumers.

197.    Plaintiffs demand judgment against Honda for actual damages plus costs and attorneys' fees incurred in bring this action as provided for in KAN. STAT. ANN. § 50-634(e).

198.    In addition, Plaintiffs pray for an award of a civil penalty against Defendant in the amount of $10,000 per violation, pursuant to KAN. STAT. ANN. § 50-636(a).

### COUNT XI
### BREACH OF EXPRESS WARRANTY
### KAN. STAT. ANN. § 84-2-313
### (On Behalf of the Kansas Sub-Class)

199.    Plaintiffs repeat and reallege the allegations above as if fully set forth herein.

200.    Honda is and was at all relevant times a merchant with respect to motor vehicles. KAN. STAT. ANN. § 84-2-104.

201.    Pursuant to KAN. STAT. ANN. § 84-2-313(1)(a), "[e]xpress warranties by the seller are created" by "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise."

202.    In its Warranty and advertisements, brochures, and through statements in the media, Honda expressly warranted that it would repair or replace defects in material and workmanship free of charge if they became apparent during the warranty period. For example, the following language appears in Class Vehicle Warranty manuals:

-49-

"Honda will repair or replace any part that is defective in material or workmanship under normal use."

203.   Honda's Warranty, as well as advertisements, brochures, and other statements in the media regarding Class Vehicles, formed the basis of the bargain that was reached when Plaintiffs and the other Class members purchased or leased their Class Vehicles.

204.   Honda breached the express warranty to repair and replace defects in materials and workmanship of any part supplied by Honda. Honda has not repaired or replaced, and has been unable to repair or replace, the Class Vehicles' materials and workmanship defects, namely the soy-based parts and components.

205.   At the time of selling or leasing Class Vehicles, Honda did not provide Class Vehicles that conformed to its express warranties.

206.   Furthermore, the Warranty of repair and replacement to defective parts fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs and other Class members whole because Honda has failed and/or refused to adequately provide the promised remedies within a reasonable time.

207.   Accordingly, recovery by Plaintiffs and the other Class members is not limited to the limited warranty of repair and replacement of parts defective in material or workmanship, and Plaintiffs, individually and on behalf of the other Class members, seek all remedies as allowed by law.

208. Also, as alleged in more detail herein, at the time that Honda warranted and sold the Class Vehicles it knew that the Class Vehicles did not conform to the warranties and were inherently defective, and Honda wrongfully and fraudulently misrepresented and/or concealed material facts regarding its Class Vehicles. Plaintiffs and the other Class members were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

209. Moreover, many of the injuries flowing from the Class Vehicles cannot be resolved through the limited remedy of "repair or replace," as many incidental and consequential damages have already been suffered due to Honda's fraudulent conduct as alleged herein and due to its failure and/or continued failure to provide such limited remedy within a reasonable time. Any limitation on Plaintiffs' and the other Class members' remedies would be insufficient to make Plaintiffs and the other Class members whole.

210. Finally, due to Honda's breach of warranty as set forth herein, Plaintiffs and the other Class members assert as an additional and/or alternative remedy, as set forth in KAN. STAT. ANN. § 84-2-608, a revocation of acceptance of goods and a return to Plaintiffs and to the other Class members of the purchase price of all Class Vehicles currently owned and such other incidental and consequential damages as allowed under KAN. STAT. ANN. § 84-2-711 and 84-2-608.

211. Honda was provided notice of these issues by numerous complaints filed against it, including the instant complaint, and by numerous individual letters and

communications sent by consumers before or within a reasonable amount of time after the allegations of the Defect became public.

212.   As a direct and proximate result of Honda's breach of express warranties, Plaintiffs and the other Class members have been damaged in an amount to be determined at trial.

## COUNT XII
## BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY
### KAN. STAT. ANN. § 84-2-314
### (On Behalf of the Kansas Sub-Class)

213.   Plaintiffs repeat and reallege the allegations above as if fully set forth herein.

214.   Honda is and was at all relevant times a merchant with respect to motor vehicles. KAN. STAT. ANN. § 84-2-104.

215.   A warranty that the Class Vehicles were in merchantable condition was implied by law, pursuant to KAN. STAT. ANN. § 84-2-314.

216.   The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Specifically, the Class Vehicles suffer from an inherent Defect, as alleged herein.

217.   Honda was provided notice of these issues by numerous complaints filed against it, including this Complaint, and by numerous individual letters, telephone calls, and other communications sent by Plaintiffs and other Class members before or within a reasonable amount of time after the allegations of the Defect became public.

218.    Plaintiffs and the other Class members have had sufficient direct dealings with either Honda or its agents (*e.g.*, dealerships) to establish privity of contract between Honda, on the one hand, and Plaintiffs and the other Class members, on the other hand. Notwithstanding this, privity is not required in this case because Plaintiffs and the other Class members are intended third-party beneficiaries of contracts between Honda and its dealers. Specifically, they are the intended beneficiaries of Honda's implied warranties. The dealers were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements provided with the Class vehicles. The warranty agreements were designed for and intended to benefit the ultimate consumers only. Finally, privity is also not required because Plaintiffs' and the other Class members' Class vehicles are dangerous instrumentalities due to the aforementioned Defect and nonconformities.

219.    As a direct and proximate result of Honda's breach of the warranty of merchantability, Plaintiffs and the other Class members have been damaged in an amount to be proven at trial.

### COUNT XIII
### UNJUST ENRICHMENT/RESTITUTION
**(On Behalf of the Nationwide Class, or Alternatively, the Kansas Sub-Class)**

220.    Plaintiffs repeat and reallege the allegations above as if fully set forth herein.

221.    This claim is pled in the alternative to the other claims set forth herein.

-53-

222.    As the intended and expected result of its conscious wrongdoing, Honda has profited and benefited from Plaintiffs' and Class members' purchase of Class Vehicles.

223.    Honda has voluntarily accepted and retained these profits and benefits with full knowledge and awareness that, as a result of Honda's misconduct alleged herein, Plaintiffs and the Class were not receiving vehicles of the quality, nature, fitness, or value that had been represented by Honda and that a reasonable consumer would expect.

224.    Honda has been unjustly enriched by its fraudulent and deceptive conduct in connection with the sale and lease of Class Vehicles and by withholding benefits from Plaintiffs and the Class at the expense of these parties.

225.    Equity and good conscience militate against permitting Honda to retain these profits and benefits, and Honda should be required to make restitution of its ill-gotten gains resulting from the conduct alleged herein.

## COUNT XIV
## DECLARATORY RELIEF (PLEADING IN THE ALTERNATIVE)
### (On Behalf of the Nationwide Class, or Alternatively, the Kansas Sub-Class)

226.    Plaintiffs repeat and reallege the allegations above as if fully set forth herein.

227.    This claim is pled in the alternative to the other claims set forth herein.

228.    Honda designed, manufactured, produced, tested, inspected, marketed, distributed, and sold Class Vehicles that contain the Defect—a material defect—as described above.

-54-

229.   In the event the fact finder determines that monetary relief is an insufficient remedy for the conduct described above, the Plaintiffs and Class members further allege as follows: an actual controversy, over which this Court has jurisdiction, now exists between Plaintiffs and Honda concerning their respective rights, duties, and obligations for which Plaintiffs desire a declaration of rights under the Class Vehicle warranties. Pursuant to 28 U.S.C. § 2201, or in the alternative, the state declaratory judgment law of California, this Court may declare the rights and legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

230.   Honda warrants and advertises the reliability and workmanship of the Class Vehicles. Plaintiffs contend that Honda breached its warranties to Plaintiffs and the Class members when they received Class Vehicles at time of the purchase that were worth less than what was promised by Honda's warranties.

231.   Honda's warranties explicitly warrant materials and workmanship and do not disclaim or exclude the Defect or the type of damage suffered as a result of the Defect in the Class Vehicles.

232.   Plaintiffs seek a declaration of the parties' respective rights, duties and obligations under the Class Vehicle warranties—including the Warranty—and other promises made by Honda related to the quality and workmanship of the Class Vehicles, and specifically that Plaintiffs and the Class members are entitled to recover their out-of-

pocket expenses related to repairs and/or replacement (including labor costs) of their defective and unworkmanlike Class Vehicles under the Class Vehicle warranties.

233.    Specifically, Plaintiffs seek a declaratory judgment that Honda's warranties for Class Vehicles provide coverage for, and are to be read to include coverage for, rodent or other animal damage in Class Vehicles resulting from chewing or eating soy-based parts or materials in Class Vehicles' electrical wiring and wiring systems. Plaintiffs also seek a declaratory judgment that nothing in Honda's warranties for Class Vehicles disclaims or excludes warranty coverage for the Defect described herein.

234.    A judicial determination is necessary in order for Plaintiffs and the Class members to ascertain their rights and duties under Honda's Class Vehicle warranties. At this time, Plaintiffs and the Class members have Class Vehicles that were defective upon lease or purchase and/or continue to remain defective.

235.    Plaintiff and Class members suffered damages at the time of their purchase or lease and have paid or will have to pay future repairs and/or replacement costs as a direct result of the Defect in the Class Vehicles.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and similarly situated members of the Class, respectfully request that this Court award the following relief:

(a) determine that this action is a proper class action, certifying Plaintiff as a class representative under Federal Rule of Civil Procedure 23 and Plaintiff's counsel as Class Counsel;

(b) all actual, general, special, incidental, statutory, punitive, and consequential damages to which Plaintiffs and Class members are entitled;

(c) pre-judgment and post-judgment interest on such monetary relief;

(d) injunctive and/or declaratory relief, including, without limitation, an order that requires Honda to repair, recall, and/or replace the Class Vehicles and to extend the applicable warranties to a reasonable period of time, or, at a minimum, to provide Plaintiffs and Class members with appropriate curative notice regarding the existence and cause of the Defect;

(e) reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(f) such other and further relief as the Court may deem just and proper. Plaintiffs respectfully demand a jury trial for all claims so triable.

1    Dated: January 10, 2017

2                                                     NAPOLI SHKOLNIK PLLC

3

4                                                     */s/ Jennifer Liakos*
                                                      Jennifer Liakos
5                                                     525 South Douglas Street, Suite 260
                                                      El Segundo, CA 90245
6                                                     Telephone: (310) 331-8224
7                                                     Fax: (646) 843-760
                                                      Email: jliakos@napolilaw.com
8

9                                                     Paul B. Maslo (*pro hac forthcoming*)
                                                      Andrew Dressel (*pro hac forthcoming*)
10                                                    360 Lexington Avenue, 11th Floor
                                                      New York, New York 10017
11                                                    Telephone: (212) 397-1000
12                                                    Fax: (646) 843-7603
                                                      Email: pmaslo@napolilaw.com
13                                                            adressel@napolilaw.com

14

15                                                    *Counsel for Plaintiffs*

16

17

18

19

20

21

22

23

24

25

26

27

28
                                              -58-