1  Michael L. Mallow, SBN 188745
   mmallow@sidley.com
2  Mark D. Campbell, SBN 180528
   mcampbell@sidley.com
3  Darlene M. Cho, SBN 251167
   dcho@sidley.com
4  SIDLEY AUSTIN LLP
   555 West Fifth Street, Suite 4000
5  Los Angeles, California 90013

6  Attorneys for Defendant
   American Honda Motor Co., Inc.
7

8              UNITED STATES DISTRICT COURT

9             CENTRAL DISTRICT OF CALIFORNIA

10                   WESTERN DIVISION

11 | JAMES R. MCKOWN AND            | ) | Case No. 2:17-cv-00204 R (JCx)
   | MARGARET J. MCKOWN,            | ) |
12 | individually and on behalf of all others | ) | Assigned to: Hon. Manuel L. Real
   | similarly-situated,            | ) |
13 |                                | ) | **MEMORANDUM OF POINTS AND**
   |            Plaintiffs,          | ) | **AUTHORITIES IN SUPPORT OF**
14 |                                | ) | **MOTION TO DISMISS**
   | vs.                            | ) | **PLAINTIFFS' CLASS ACTION**
15 |                                | ) | **COMPLAINT**
   | AMERICAN HONDA MOTOR           | ) |
16 | COMPANY, INC.,                 | ) |
17 |            Defendant.          | ) |
18 |                                | ) |
   |                                | ) | Complaint Filed: January 10, 2017
19 |                                | ) |

20

21

22

23

24

25

26

27

28

# Table of Contents

Page

I.    Introduction ......................................................................................... 1

II.   Facts as Alleged By Plaintiffs ...........................**Error! Bookmark not defined.**

III.  Applicable Standard on Rule 12(b)(6) Motion to Dismiss ................................. 3

IV.   Plaintiffs' California Claims Fail As A Matter Of Law...................................... 4

    A.    Plaintiffs' Song-Beverly Act Claims Must Be Dismissed....................... 4

    B.    Plaintiffs' Individual UCL (Count IV) and CLRA (Count V) Claims, and Claims for Breach of Express and Implied Warranties Under California Law (Counts VIII and IX), Must Be Dismissed ..................... 5

        1.    Material differences exist between California and Kansas Law ...................................................................................... 7

            a.    Material Differences Between California and Kansas' Consumer Protection Statutes ................................. 7

            b.    Material Difference Between California and Kansas Breach of Express Warranty Laws..................................... 10

            c.    Material Differences Between California and Kansas Breach of Implied Warranty Laws ................................. 11

        2.    Under *Mazza*, California does not have a predominant interest in applying its laws to govern Kansas transactions ........ 12

V.    Plaintiffs' Claim for Violation of the Kansas CPA (Count X) Fails ............... 13

VI.   Plaintiffs' Breach of Express Warranty Claims (Counts VIII and XI) Based on Limited 3-year/36,000-mile NVLW Fails as a Matter of Law Because Plaintiffs Have Alleged a Design Issue ................................. 15

VII.  "Acts of Nature" Exclusion in NVLW Bars Plaintiffs' Claims for Breach of Express Warranty (Counts VIII and XI) and for Breach of the Implied Warranty of Merchantability (Counts IX and XII) ................................. 18

VIII. Plaintiffs' Claims for Breach of Express Warranty (Count II) and Breach of the Implied Warranty of Merchantability (Count III) Pursuant to the "Uniform Commercial Code" Should Be Stricken or Dismissed As Duplicative Claims ................................. 20

IX.   Plaintiffs' Claim for Unjust Enrichment (Count XIII) Under Either California or Kansas Law Fails ................................. 21

X.    Plaintiffs' Independent Claim for Declaratory Relief (Count XIV) Should Be Dismissed ................................. 22

XI.   Plaintiffs' Magnuson-Moss Claim (Count I) Fails.............................. 23

i

220289741

1

XII.   Conclusion ........................................................................................... 24

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# Table of Authorities

**Page(s)**

**Cases**

*In re Actiq Sales & Mktg. Practices Litig.*,
   307 F.R.D. 150 (E.D. Pa. 2015) ........................................................................ 11

*Alexander v. Certified Master Builders Corp.*,
   268 Kan. 812 (Kan. 2000) ................................................................................. 8

*Aryeh v. Canon Bus. Solutions, Inc.*,
   55 Cal. 4th 1185 (2013) .................................................................................... 8

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ...................................................................................... 3, 4

*Avedisian v. Mercedes-Benz USA, LLC*,
   No. 12-cv-0936 DMG, 2013 U.S. Dist. LEXIS 73444 (C.D. Cal. May
   22, 2013) .......................................................................................................... 7

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ...................................................................................... 3, 4

*Birdsong v. Apple, Inc.*,
   590 F.3d 955 (9th Cir. 2009) ......................................................................... 24

*Brothers v. Hewlett-Packard Co.*,
   No. C-06-02254 RMW, 2007 U.S. Dist. LEXIS 13155 (N.D. Cal. Feb.
   12, 2007) ........................................................................................................ 17

*Bruce Martin Constr. v. CTB, Inc.*,
   735 F.3d 750 (8th Cir. 2013) ......................................................................... 17

*Cali v. Chrysler Group LLC*,
   No. 10 Civ. 7606 (JSR), 2011 U.S. Dist. LEXIS 5220 (S.D.N.Y. Jan.
   18, 2011), *aff'd* 426 Fed. Appx. 38 (2d Cir. Aug. 30, 2011) ....................... 18

*Carswell v. JPMorgan Chase Bank N.A.*,
   500 Fed. Appx. 580 (9th Cir. 2012) .............................................................. 21

*Clark v. LG Elecs. U.S.A., Inc.*,
  No. 13-cv-485 JM, 2013 U.S. Dist. LEXIS 155179 (S.D. Cal. Oct. 29,
  2013) ................................................................................................... 17

*Clemens v. DaimlerChrysler Corp.*,
  534 F.3d 1017 (9th Cir. 2008) ..................................................... 11, 24

*Consolidated Papers, Inc. v. Dorr-Oliver, Inc.*,
  153 Wis. 2d 589 (Ct. App. 1989) ................................................ 19, 20

*Cornelison v. Denison State Bank*,
  315 P.3d 278 (Kan. Ct. App. 2014) ................................................ 7, 14

*Cover v. Windsor Surry Co.*,
  No. 14-cv-05262-WHO, 2016 U.S. Dist. LEXIS 16475 (N.D. Cal.
  Feb. 10, 2016) .................................................................................... 6, 9

*Culp v. Sifers*,
  533 F. Supp. 2d 1119 (D. Kan. 2007) ................................................. 8

*Darisse v. Nest Labs, Inc.*,
  No. 5:14-cv-01363-BLF, 2016 U.S. Dist. LEXIS 107938 (N.D. Cal.
  Aug. 15, 2016) ................................................................................... 9, 12

*Daugherty v. Am. Honda Motor Co., Inc.*,
  144 Cal. App. 4th 824 (2006), *as modified* ................................. 16, 23, 24

*Dinwiddie v. Suzuki Motor of Am., Inc.*,
  111 F. Supp. 3d 1202 (W.D. Okla. 2015) ............................................ 24

*Durell v. Sharp Healthcare*,
  183 Cal. App. 4th 1350 (2010) ............................................................. 8

*El Zarape Tortilla Factory, Inc. v. Plant Food Corp.*,
  90 Cal. App. 2d 336 (1949) ................................................................. 19

*Farrell v. Gen. Motors Corp.*,
  249 Kan. 231, 815 P.2d 538 (1991) .................................................... 15

*Feuerstein v. Home Depot, U.S.A., Inc.*,
  No. 2:12-cv-01062 JWS, 2014 U.S. Dist. LEXIS 78131 (D. Ariz. June
  6, 2014) ............................................................................................... 17

*In re Ford Motor Co. Ignition Switch Prods. Liab. Litig. v. Ford Motor Co.*, 194 F.R.D. 484 (D.N.J. 2000) ........................................................................ 10

*Four Seasons Apts. v. AAA Glass Serv.*,
152 P.3d 101 (Kan. Ct. App. 2007) ................................................................ 8

*Fradis v. Savebig.com*,
No. CV 11-07275 GAF, 2011 U.S. Dist. LEXIS 154915 (C.D. Cal. Dec. 2, 2011) ........................................................................................................ 23

*Gertz v. Toyota Motor Corp.*,
No. CV 10-1089 PSG, 2011 U.S. Dist. LEXIS 94183 (C.D. Cal. Aug. 22, 2011), *aff'd sub nom. Troup v. Toyota Motor Corp.*, 545 Fed. Appx. 668 (9th Cir. 2013) ............................................................................ 15, 16

*Gianino v. Alacer Corp.*,
846 F. Supp. 2d 1096 (C.D. Cal. 2012) ...................................................... 8, 9

*Gonzalez v. Mazda Motor Corp.*,
No. 16-cv-02087-MMC, 2017 U.S. Dist. LEXIS 2318 (N.D. Cal. Jan. 5, 2017) .................................................................................................... 6, 11

*Gonzalez v. PepsiCo, Inc.*,
489 F. Supp. 2d 1233 (D. Kan. 2007) ........................................................ 12

*Heller v. Martin*,
14 Kan. App. 2d 48, 782 P.2d 1241 (1989) .............................................. 14

*Horvath v. LG Elecs. MobileComm U.S.A., Inc.*,
No. 3:11-CV-01576-H-RBB, 2012 U.S. Dist. LEXIS 19215 (S.D. Cal. Feb. 13, 2012) ...................................................................................... 17

*Janke v. Brooks*,
No. 11-cv-837-REB, 2012 U.S. Dist. LEXIS 51297 (D. Colo. Apr. 11, 2012) .......................................................................................................... 24

*Jensen v. Quality Loan Serv. Corp.*,
702 F. Supp. 2d 1183 (E.D. Cal. 2010) ...................................................... 22

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009) .................................................................. 4

*Keegan v. Am. Honda Motor Co.*,
838 F. Supp. 2d 929 (C.D. Cal. 2012) .................................................... 5, 6

220289741

*Krieger v. Nick Alexander Imports, Inc.*,
  234 Cal. App. 3d 205 (1991) ................................................................ 10

*Lenhoff Enters. v. United Talent Agency, Inc.*,
  No. CV 15-01086-BRO (FFMx), 2015 U.S. Dist. LEXIS 150141
  (C.D. Cal. Sep. 18, 2015) ...................................................................... 22

*Littlehale v. Hain Celestial Group, Inc.*,
  No. C 11-6342 PJH, 2012 U.S. Dist. LEXIS 162530 (N.D. Cal. July 2,
  2012) ........................................................................................................ 8

*Mack Trucks, Inc. v. Borgwarner Turbo Sys., Inc.*,
  508 Fed. Appx. 180 (3d Cir. 2012) ...................................................... 18

*Masonek v. Wells Fargo Bank, N.A. (In re Medical Capital Sec. Litig.)*,
  No. 10-2145 DOC, 2010 U.S. Dist. LEXIS 143439 (C.D. Cal. Aug.
  31, 2010) ................................................................................................ 21

*Mazza v. Am. Honda Motor Co., Inc.*,
  666 F.3d 581 (9th Cir. 2012) .........................................................*passim*

*McCabe v. Am. Honda Motor Corp.*,
  100 Cal. App. 4th 1111 (2002) .............................................................. 15

*Monticello v. Winnebago Indus. Inc.*,
  369 F. Supp. 2d 1350 (N.D. Ga. 2005) ................................................. 23

*Orthoflex, Inc. v. Thermotek, Inc.*,
  No. 3:11-CV-0870-D, 2013 U.S. Dist. LEXIS 112865 (N.D. Tex.
  Aug. 9, 2013) ........................................................................................ 17

*Osborne v. Subaru of America, Inc.*,
  198 Cal. App. 3d 646,656 (1988) .................................................... 6, 11

*Ove v. Gwinn*,
  264 F.3d 817 (9th Cir. 2001) .................................................................. 4

*Permpoon v. Wells Fargo Bank Nat. Ass'n*,
  No. 09-01140, 2009 U.S. Dist. LEXIS 89723 (S.D. Cal. Sep. 29,
  2009) ...................................................................................................... 23

*Plastic Packaging Corp. v. Sun Chem. Corp.*,
  136 F. Supp. 2d 1201 (D. Kan. 2001) ................................................... 14

*Porras v. Bell*,
857 P.2d 676 (Kan. Ct. App. 1993) .......................................................... 7

*Regal Ware, Inc. v. Vita Craft Corp.*,
653 F. Supp. 2d 1146 (D. Kan. 2006) ...................................................... 21

*Robinson v. Kia Motors Am., Inc.*,
No. 13-006, 2015 U.S. Dist. LEXIS 121755 (D.N.J. Sep. 11, 2015)..................... 21

*Royal v. Cook*,
984 So. 2d 156 (La. Ct. App. 2008) ........................................................... 1

*Sharma v. BMW of N. Am., LLC*,
No. C-13-2274 MMC, 2014 U.S. Dist. LEXIS 84406 (N.D. Cal. June
19, 2014) ....................................................................................... 17

*Shepard v. DineEquity, Inc.*,
No. 08-2416-KHV, 2009 U.S. Dist. LEXIS 97245 (D. Kan. Sep. 25,
2009) ............................................................................................ 13

*Smith v. Ford Motor Co.*,
462 Fed. Appx. 660 (9th Cir. 2011) ......................................................... 21

*Suhr v. Aqua Haven, LLC*,
No. 11-1165-EFM, 2013 U.S. Dist. LEXIS 100200 (D. Kan. 2013)..................... 11

*Thompson v. Jiffy Lube Int'l, Inc.*,
No. 05-1203-WEB, 2006 U.S. Dist. LEXIS 39113 (D. Kan. June 13,
2006) ............................................................................................ 14

*Tirabassi v. Chase Home Fin., LLC*,
No. 14-08790 BRO, 2015 U.S. Dist. LEXIS 43730 (C.D. Cal. Mar.
24, 2015) ................................................................................. 22, 23

*Troup v. Toyota Motor Corp.*,
545 Fed. Appx. 668 (9th Cir. 2013) ......................................................... 16

*Tucci v. Club Mediterranee*,
89 Cal. App. 4th 180 (2001) .................................................................. 12

*Tucker v. Pacific Bell Mobile Servs.*,
208 Cal. App. 4th 201 (2012) .................................................................. 7

*Vess v. Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003) ........................................................................ 4

*Voth v. Chrysler Motor Corp.*,
   218 Kan. 644 (Kan. 1976) ........................................................................... 11

*Wilhelmsen v. JC Plumbing & Heating*,
   No. 05-C-170, 2008 N.H. Super. LEXIS 123 (N.H. Super. Ct. 2008)................... 18

*Yumul v. Smart Balance, Inc.*,
   733 F. Supp. 2d 1117 (C.D. Cal. 2010) .............................................................. 4

**Statutes**

28 U.S.C. § 2201 .............................................................................................. 22

Cal. Bus. & Prof. Code § 17203 ............................................................................ 9

Cal. Bus. & Prof. Code § 17204 ............................................................................ 8

Cal. Bus. & Prof. Code § 17208 ............................................................................ 8

Cal. Civ. Code § 1761(d) ..................................................................................... 9

Cal. Civ. Code § 1780(a) ..................................................................................... 8

Cal. Civ. Code § 1783 ........................................................................................ 8

Cal. Civ. Code § 1792 ........................................................................................ 5

Cal. Comm. Code § 2301 *et seq.* ..................................................................... 10, 24

Cal. Comm. Code § 2313 ............................................................................... 2, 5, 10

Cal. Comm. Code § 2314 ............................................................................... 2, 5, 11

Cal. Comm. Code § 2317 ............................................................................. 2, 19, 20

Cal. Comm. Code § 2725(2) ................................................................................ 10

California's Consumers Legal Remedies Act, Cal. Civ. Code § 1750 *et
   seq.* ............................................................................................................ 2

California's Song-Beverly Consumer Warranty Act, Cal. Civ. Code §
   1790 et seq. .......................................................................................... 1, 4, 5

220289741

California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.* ............................................................................................... 2

Kan. Stat. Ann. § 50-624(b) ................................................................. 10

Kan. Stat. Ann. § 50-639(b) ........................................................... 11, 12

Kan. Stat. § 50-626 .................................................................... 2, 7, 14

Kan. Stat. § 50-627 ............................................................................. 15

Kan. Stat. § 50-634 ............................................................................... 9

Kan. Stat. § 60-512 ............................................................................... 8

Kan. Stat. § 84-2-301 *et seq.* ............................................................ 10

Kan. Stat. § 84-2-313 ........................................................................... 20

Kan. Stat. § 84-2-314 ........................................................................... 20

Kan. Stat. § 84-2-317 .................................................................. 2, 19, 20

Kan. Stat. § 84-2-725(2) ...................................................................... 10

Kansas Consumer Protection Act, Kan. Stat. § 50-617 *et seq.* ........... *passim*

Magnuson-Moss Warranty Act ...................................................... 23, 24

Wis. Stat. § 402.317(3) ........................................................................ 20

**Other Authorities**

Fed. R. Civ. P. 9(b) ......................................................................... 4, 13

Fed. R. Civ. P. 12(b)(6) ......................................................................... 3

ix

# I.     Introduction

Plaintiffs James and Margaret McKown ("Plaintiffs") are Kansas residents who purchased Honda vehicles in Kansas, but are pursuing this putative nationwide class action against Defendant American Honda Motor Co., Inc. ("AHM") in California and, *inter alia*, under California law to force AHM to pay for rodent damage to their vehicles. Specifically, Plaintiffs allege that their used 2013 and 2014 Honda Accord vehicles required repairs after rodents or other animals allegedly chewed through the fuel lines and wiring harnesses in the engine compartments. Plaintiffs allege, based on unverified information on the Internet, that fuel lines and wiring insulation in their vehicles are composed of soy-based material and that the soy-based material attracted rodents to their vehicles who then chewed the wires or fuel lines.[1] Although Plaintiffs allege the soy-based material is an invitation to rodents to dine under the hoods of Honda vehicles, Plaintiffs also curiously allege that AHM somehow concealed and falsely misled all *human* owners and lessees of 2012-2015 Honda vehicles with respect to the composition of wiring insulation in the engine compartment. Though it remains to be seen whether Plaintiffs have conducted any meaningful investigation into whether soy-based material is actually used for Honda wiring harnesses and fuel lines, and thus whether any good faith factual basis exists for any of their claims, as discussed herein, Plaintiffs' claims fail at this early stage as a matter of law and/or for failure to allege sufficient facts to state a claim.

Plaintiffs' claims under California's Song-Beverly Act fail because they do not allege that they purchased their vehicles in California. Plaintiffs' claims under

---

[1] Plaintiffs do not and cannot allege that rodents chewing through vehicle wiring and other engine components is a new phenomenon or unique to vehicles that incorporate soy-based wiring as rodents chewing engine wires has been a long-existing issue. It is a well-known fact that rodents habitually gnaw to control the growth of their teeth, and are known to gnaw on virtually every hard surface including wood, sheetrock and electrical wiring. *See Royal v. Cook*, 984 So. 2d 156, 163 (La. Ct. App. 2008) ("This court takes judicial notice that rodents can gnaw through wood, electrical wiring, sheetrock, et cetera,…"). The Modern Latin word "Rodentia" is derived from "rodens," present participle of "rodere" – "to gnaw," "eat away," "rodent (n.)." *See* Online Etymology Dictionary, *available at* http://www.etymonline.com (search "rodent") (last visited March 3, 2017).

California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.* ("UCL"), California's Consumers Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.* ("CLRA"), California Commercial Code § 2313, and California Commercial Code § 2314 are not viable and must be dismissed because Plaintiffs' claims should be governed under Kansas law under California's conflict-of-law principles.

Plaintiffs' claim under the Kansas Consumer Protection Act, Kan. Stat. § 50-617 *et seq.* ("Kansas CPA") fails because Plaintiffs have not alleged any facts to state a claim under Kan. Stat. § 50-626 or 50-627. Plaintiffs' claim for breach of AHM's 3-year/36,000-mile express New Vehicle Limited Warranty ("NVLW"), which covers Plaintiffs' vehicles for defects in material or workmanship, fails because Plaintiffs allege a "design" defect which is not covered by a warranty like the NVLW. Plaintiffs' claim for breach of express warranty also fails because the NVLW expressly excludes "[t]he failure of any part or accessory due to: [¶] . . . acts of nature …," which includes the act of rodents chewing vehicle electrical wiring.

Although Plaintiffs attempt to plead around the express NVLW by alleging a claim for breach of the implied warranty of merchantability, the implied warranty claim fails because the applicable Uniform Commercial Code in California and Kansas makes clear that "[w]arranties whether express or implied shall be construed as **consistent** with each other" and that "[e]xpress warranties **displace[] inconsistent** implied warranties other than an implied warranty of fitness for a particular purpose." Cal. Comm. Code § 2317; Kan. Stat. § 84-2-317 (emphases added). Hence, the "acts of nature" limitation in the NVLW correspondingly limits any implied warranty of merchantability based on damage caused by the acts of rodents. As further discussed herein, the remaining claims alleged in the Complaint fail on numerous other grounds, including because they are duplicative or fail to state a cause of action.

## II.   Facts as Alleged by Plaintiffs

On or about February 6, 2016, Plaintiffs purchased a pre-owned 2014 Honda Accord from Jay Wolfe Honda in Olathe, Kansas for their teenage son, Joseph "Cole"

McKown. Plaintiffs' Class Action Complaint, Doc. No. 1 ("Compl."), ¶ 17. On or about March 19, 2016, Plaintiff James McKown purchased a pre-owned 2013 Honda Accord from O'Neill Honda in Overland Park, Kansas for their other teenage son, Cade McKown. *Id.* ¶ 18. Plaintiffs allege that their son's 2014 Accord was rendered inoperable in August and October of 2016 due to rodents chewing through the fuel line or wiring insulation. *Id.* ¶¶ 19-23. In October of 2016, their other son's 2013 Accord was rendered inoperable due to rodents chewing through the transmission wiring harness. *Id.* ¶ 24.

Failing to identify *any* reliable source that Honda vehicles are equipped with soy-based material, Plaintiffs allege that the insulation coating the fuel line and transmission wiring harness were "soy-based," *see id.* ¶¶ 22, 24, and that the "environmentally-friendly and less expensive soy-based coating" caused their vehicles to require repairs, *id.* ¶ 41. However, Plaintiffs allege no facts to support their conclusion that the wiring harness and fuel lines in Honda vehicles contained soy-based products or that rodents are somehow more inclined to chew on soy-based wiring than other types of wiring. Rather, Plaintiffs claim that the "prevalence of complaints . . . and the high volume of media and consumer watchdog coverage . . . highlight the disingenuous nature of Honda's denial of . . . (b) a connection between soy insulation in Class Vehicles and rodent damage." *Id.* ¶ 42.

## III.   Applicable Standard on Rule 12(b)(6) Motion to Dismiss

To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level."). The facts alleged must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. While a court must accept as true

3

all material allegations in the complaint, as well as reasonable inferences to be drawn from those allegations, "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Ove v. Gwinn*, 264 F.3d 817, 821 (9th Cir. 2001); *see also Iqbal*, 556 U.S. at 678 (a pleading is insufficient if it provides only "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertions devoid of further factual enhancement" (internal quotations and brackets omitted)); *Twombly*, 550 U.S. at 555 (court is "not bound to accept as true a legal conclusion couched as a factual allegation").

"While a federal court will examine state law to determine whether the elements of fraud have been pled sufficiently to state a cause of action, the Rule 9(b) requirement that the *circumstances* of the fraud must be stated with particularity is a federally imposed rule." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003) (citations omitted). Where, as here, claims under the consumer protection statutes sound in fraud or are based on an alleged unified course of fraudulent conduct, they are subject to the heightened pleading standard of Federal Rule of Civil Procedure 9(b). *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (holding that Rule 9(b) applies to claims under California's UCL and CLRA). Rule 9(b) requires a plaintiff to "set forth *more* than the neutral facts necessary to identify the transaction." *Kearns*, 567 F.3d at 1124 (citation omitted). Plaintiff must specifically allege the "who, what, when, where, and how of the misconduct charged." *Yumul v. Smart Balance, Inc.*, 733 F. Supp. 2d 1117, 1122-23 (C.D. Cal. 2010) (internal quotations omitted).

## IV.   Plaintiffs' California Claims Fail As A Matter Of Law

### A.   Plaintiffs' Song-Beverly Act Claims Must Be Dismissed

Plaintiffs allege express and implied warranty claims under California's Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 1790 et seq. (the "Song-Beverly Act"). *See* Compl. ¶¶ 139-164 (Counts VI and VII). However, these claims are not viable because Plaintiffs allege they purchased their 2013 and 2014 Honda vehicles in

Olathe and Overland Park, Kansas. *See* Compl. ¶¶ 17-18.

The Song-Beverly Act, by its express terms, applies only to consumer goods sold "*in this state*." Cal. Civ. Code § 1792 (emphasis added); *see also id.* § 1793.2 (applying to "consumer goods sold in this state"). Because Plaintiffs allege they purchased their vehicles in Kansas, their claims under the Song-Beverly Act must be dismissed with prejudice. *Keegan v. Am. Honda Motor Co.*, 838 F. Supp. 2d 929, 945 n.51 (C.D. Cal. 2012) (dismissing claims under Song-Beverly as to named plaintiffs who purchased their cars outside of California).

### B. Plaintiffs' Individual UCL (Count IV) and CLRA (Count V) Claims, and Claims for Breach of Express and Implied Warranties Under California Law (Counts VIII and IX), Must Be Dismissed

Plaintiffs assert numerous other California-based claims, including under the UCL, Compl. ¶¶ 108-124 (Count IV); the CLRA, Compl. ¶¶ 125-138 (Count V); Cal. Comm. Code § 2313, Compl. ¶¶ 165-177 (Count VIII); and Cal. Comm. Code § 2314, Compl. ¶¶ 178-184 (Count IX). However, the foregoing California claims must be dismissed because Plaintiffs' claims "should be governed by the consumer protection laws of the jurisdiction in which the transaction took place." *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 594 (9th Cir. 2012).

In *Mazza*, the Ninth Circuit held that based on principles of federalism, "each state has a strong interest in applying its own consumer protection laws to" transactions that occurs within its borders. *Id.* at 592. This is because "[e]ach of our states has an interest in balancing the range of products and prices offered to consumers with the legal protections afforded to them." *Id.* Accordingly, "[g]etting the optimal balance between protecting consumers and attracting foreign businesses, with resulting increase in commerce and jobs, is not so much a policy decision committed to our federal appellate court, or to particular district courts within our circuit, as it is a decision properly to be made by the legislatures and courts of each state." *Id.* As in *Mazza*, "[t]hese interests are squarely implicated in this case." *Id.* at 593. While *Mazza*'s discussion focused on consumer protection statutes, "its guidance is equally

220289741

applicable to plaintiffs' express warranty claim, as express warranty statutes involve many of the same interests that must be balanced." *Keegan,* 284 F.R.D. at 548.

Ignoring these interests, Plaintiffs pursue claims under the California CLRA and UCL, and under the California Commercial Code. As a California district court recently held, "[a]lthough *Mazza* was decided at class certification, 'the principle articulated in *Mazza* applies generally and is instructive even when addressing a motion to dismiss.'" *Cover v. Windsor Surry Co.*, No. 14-cv-05262-WHO, 2016 U.S. Dist. LEXIS 16475, at *15 (N.D. Cal. Feb. 10, 2016) (quoting *Frezza v. Google Inc.*, No. 12-cv-00237-RMW, 2013 U.S. Dist. LEXIS 57462, at *17-18 (N.D. Cal. Apr. 22, 2013)). As Judge Orrick recognized in *Cover*, *Mazza* is "not only relevant but controlling" even at the motion to dismiss stage. *Cover*, 2016 U.S. Dist. LEXIS 16475, at *15 (quoting *Frezza*, 2013 U.S. Dist. LEXIS 57462, at *16); *Gonzalez v. Mazda Motor Corp.*, No. 16-cv-02087-MMC, 2017 U.S. Dist. LEXIS 2318, at *3-4 (N.D. Cal. Jan. 5, 2017) [hereinafter, "*Gonzalez/Mazda*"] (choice of law determination was appropriate at the pleadings stage where further development of the factual record was not likely to materially impact the choice of law determination); *see also Osborne v. Subaru of America, Inc.*, 198 Cal. App. 3d 646, 656 (1988). *Mazza* is particularly controlling in a case where AHM is the defendant and the claims being asserted are based on violation of California's consumer protection laws, just as they were in *Mazza*.

When parties disagree about which state's law applies, California conflict-of-law principles require a court to conduct a three-step "governmental interest" analysis. *Mazza*, 666 F.3d at 590-91 (citing *McCann v. Foster Wheeler LLC*, 48 Cal. 4th 68, 81-82 (2010)). The court first asks whether the other state's law "materially" differs from the law of California. *Id.* at 590. If there is a material difference, the court determines whether the other state "has an interest in having its law applied." *Id.* at 591-92. If the other state has a cognizable interest, the court determines which state's interests would be "more impaired if its law were not applied." *Id.* at 590. The court then applies the

law of whichever state has the predominant interest. As detailed herein, while the material differences discussed below are by no means exhaustive, they are sufficient to show that Plaintiffs cannot pursue claims under the UCL, CLRA and the California Commercial Code and that their claims "should be governed by the consumer protection laws of the jurisdiction in which the transaction took place." *Mazza*, 666 F.3d at 594.

### 1.   Material differences exist between California and Kansas Law

As discussed below, there are material differences between California and Kansas' consumer protection statutes and between California and Kansas law with respect to express and implied warranty claims under the Uniform Commercial Code.

#### a.   Material Differences Between California and Kansas' Consumer Protection Statutes

There are material differences between the UCL and CLRA, and the Kansas CPA, including with respect to scienter and reliance requirements, the statute of limitations, and the available remedies. The Kansas CPA and the CLRA also materially differ with respect to the meaning of "consumer."

**Intent to deceive.** The CLRA and UCL do not have an "intent to deceive" requirement. *See Avedisian v. Mercedes-Benz USA, LLC*, No. 12-cv-0936 DMG, 2013 U.S. Dist. LEXIS 73444, at *21 (C.D. Cal. May 22, 2013); *Tucker v. Pacific Bell Mobile Servs.*, 208 Cal. App. 4th 201, 225 (2012). An omission-based claim under the Kansas CPA, like the one asserted by Plaintiffs, *see* Compl. ¶¶ 185-198 (Count X), requires proof of an intent to deceive and "mere nondisclosure [is] not sufficient." *Porras v. Bell*, 857 P.2d 676, 678 (Kan. Ct. App. 1993); Kan. Stat. § 50-626(b)(3) (the "*willful* failure to state a material fact, or the willful concealment, suppression or omission of a material fact" is a deceptive act or practice under the Kansas CPA) (emphasis added); *see also Cornelison v. Denison State Bank*, 315 P.3d 278 (Kan. Ct. App. 2014) ("A willful act under the KCPA is one performed with a designed purpose or intent on the part of a person to do wrong or to cause injury to another.")

220289741

**Reliance.** Reliance requirements also differ among the California and Kansas statutes. The UCL and CLRA impose a reliance requirement. *See Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1362 & n.6, 1367 (2010); Cal. Bus. & Prof. Code § 17204; Cal. Civ. Code § 1780(a). However, the Kansas CPA does not require reliance upon the alleged deceptive act or practice. *See* Notes on Use for Pattern Instr. Kan. Civil 129.01-A ("One of the important distinctions of the Kansas Consumer Protection Act is that reliance upon the deceptive act or practice is not required.") As the Ninth Circuit court held in *Mazza*, differences regarding any requirement to demonstrate reliance and scienter are material because the requirement "will spell the difference between the success and failure of a claim." *See Mazza*, 666 F.3d at 591; *see also Gianino v. Alacer Corp.*, 846 F. Supp. 2d 1096, 1100-1101 (C.D. Cal. 2012) (differences in the laws as to a requirement of some degree of scienter, reliance requirement, requirement of pre-filing notice, statutes of limitation, and available remedies, among others, were material).

**Statute of limitations/tolling.** The statutes materially differ with respect to the statute of limitations and tolling rules. The statute of limitations for a UCL claim is 4 years and for a CLRA claim is 3 years. Cal. Bus. & Prof. Code § 17208; Cal. Civ. Code § 1783. The statute of limitations for a Kansas CPA claim is 3 years. Kan. Stat. § 60-512; *Alexander v. Certified Master Builders Corp.*, 268 Kan. 812, 824 (Kan. 2000). Even a one-year difference in the statute of limitations can be "material." *Cf. Littlehale v. Hain Celestial Group, Inc.*, No. C 11-6342 PJH, 2012 U.S. Dist. LEXIS 162530, at *3-4 (N.D. Cal. July 2, 2012) (finding one-year difference in statute of limitations for fraud claim to be material). While certain UCL claims may be subject to tolling based on the delayed discovery rule, *see Aryeh v. Canon Bus. Solutions, Inc.*, 55 Cal. 4th 1185 (2013) (UCL), a claim under the Kansas CPA is not subject to the delayed discovery rule. *See Four Seasons Apts. v. AAA Glass Serv.*, 152 P.3d 101, 104-105 (Kan. Ct. App. 2007); *Culp v. Sifers*, 533 F. Supp. 2d 1119, 1127 (D. Kan. 2007). The variances in the statute of limitations (*e.g.,* between the Kansas CPA and

220289741

the UCL) and the applicability or non-applicability of the discovery rule are "plainly" material in that they would spell the difference between the success and failure of a claim for, as an example, any Kansas resident who purchased a 2012-2015 Honda vehicle prior to January 10, 2014 (*i.e.*, three years before the filing of this action). *See Mazza*, 666 F.3d at 591; *see Darisse v. Nest Labs, Inc.*, No. 5:14-cv-01363-BLF, 2016 U.S. Dist. LEXIS 107938, at *31 (N.D. Cal. Aug. 15, 2016) (holding that differences in the states' laws with respect to varying statute of limitations "plainly are material").

**Remedies.** There are also material differences in the types of remedies available under Kansas and California law. *See Mazza*, 666 F.3d at 591 (differences in the remedies given by state laws is material); *Cover*, 2016 U.S. Dist. LEXIS 16475, at *17 (differences regarding the types of remedies available was material). Under the CLRA, a plaintiff can recover actual damages (at least $1000), an injunction, restitution, punitive damages and "any other relief that the court deems proper." *Mazza*, 666 F.3d at 591 (citing Cal. Civ. Code § 1780(a)(1)-(5)). Under the UCL, a plaintiff can only recover restitution and injunctive relief. Cal. Bus. & Prof. Code § 17203. Under the Kansas CPA, a consumer may bring a class action for declaratory judgment, an injunction and appropriate ancillary relief, but *not* for damages or for statutory civil penalties. Kan. Stat. § 50-634(b) & (c). The availability of damages under the CLRA and non-availability of damages in a class action under the Kansas CPA is a material difference. *See Gianino*, 846 F. Supp. 2d at 1101 (that some states permit recovery of damages while others limit the available remedies to equitable or restitutionary relief was a material variation in the laws).

**"Consumer" definition.** The definition of "consumer" under the CLRA and Kansas CPA materially differ. The CLRA defines consumer as "an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes." Cal. Civ. Code § 1761(d); *see also id.* § 1761(a) (defining "[g]oods" to include "tangible chattels bought or leased for use primarily *for personal, family, or household purposes*") (emphasis added). The Kansas CPA defines

"consumer" as "an individual, husband and wife, sole proprietor, or family partnership who seeks or acquires property or services for personal, family, household, *business or agricultural purposes*" and is broader in scope than the CLRA. Kan. Stat. Ann. § 50-624(b) (emphasis added). The different definitions of the word "consumer" is material. *See In re Ford Motor Co. Ignition Switch Prods. Liab. Litig. v. Ford Motor Co.*, 194 F.R.D. 484, 489-90 (D.N.J. 2000) (different definitions of "consumer" under West Virginia law, where West Virginia defined "consumer transaction" to include a sale for agricultural purpose, but Georgia law did not, was a material difference).

### b. Material Difference Between California and Kansas Breach of Express Warranty Laws

Plaintiffs assert a claim for breach of express warranty under California Commercial Code § 2313 (Count VIII). California and Kansas have both adopted the Uniform Commercial Code, *see* Cal. Comm. Code § 2301 *et seq.*; Kan. Stat. § 84-2-301 *et seq.*, but the laws materially differ with respect to the respective states' application of the "future performance" exception set forth in Cal. Comm. Code § 2725(2) and Kan. Stat. § 84-2-725(2).

Cal. Comm. Code § 2725(2) and Kan. Stat. Ann. § 84-2-725(2) provide:

> "A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. **A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods** and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered."

Cal. Comm. Code § 2725(2) (emphasis added); Kan. Stat. Ann. § 84-2-725(2) (emphasis added).

In *Krieger v. Nick Alexander Imports, Inc.*, 234 Cal. App. 3d 205 (1991), the California Court of Appeal held that a promise to repair all defects for a period of 36 months or within the first 36,000 miles of use was "the very definition of express warranty of future performance . . . [under] the California Uniform Commercial Code section 2313." *Id.* at 217.

220289741

In contrast to California law, in *Voth v. Chrysler Motor Corp.*, 218 Kan. 644, 652 (Kan. 1976), the Kansas Supreme Court held that a warranty promising to repair is not a warranty of future performance and that the statute of limitations accrues at the time of delivery. *Id.* at 652; *see also Suhr v. Aqua Haven, LLC*, No. 11-1165-EFM, 2013 U.S. Dist. LEXIS 100200, at *20-21 (D. Kan. 2013) (where a limited warranty specifically provided for the possibility that a malfunction or defect might occur during the warranty period, limited warranty did not constitute a future performance warranty; "A typical warranty which requires that the seller repair or replace defective parts found during the period of the warranty does not warrant the product's future performance.") (footnote citation omitted).

This difference in California and Kansas law with respect to when the statute of limitations accrue is clearly material. *See In re Actiq Sales & Mktg. Practices Litig.*, 307 F.R.D. 150, 164 (E.D. Pa. 2015) (noting as a material difference variances among state laws as to when the applicable statute of limitations starts to accrue).

### c.   Material Differences Between California and Kansas Breach of Implied Warranty Laws

Plaintiffs assert a claim for breach of the implied warranty of merchantability under California Commercial Code § 2314 (Count IX). California and Kansas law materially differ with respect to the requirement of privity to state a claim for breach of the implied warranty of merchantability under the uniform commercial code.

"Under California Commercial Code section 2314, ... a plaintiff asserting breach of warranty claims must stand in vertical contractual privity with the defendant." *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1023 (9th Cir. 2008); *Gonzalez/Mazda*, 2017 U.S. Dist. LEXIS 2318, at *9-10 (dismissing California Commercial Code claim for lack of privity); *see also Osborne*, 198 Cal. App. 3d at 656.

Although it does not appear as though the Kansas Supreme Court has decided the issue, district courts in Kansas have held that "the language of Section 50-639(b)

220289741

1   [of the Kansas Consumer Protection Act] broadly waives any privity requirement in

2   all breach of warranty claims despite any other provision of law, including the UCC."

3   *Gonzalez v. PepsiCo, Inc.*, 489 F. Supp. 2d 1233, 1243 (D. Kan. 2007); Kan. Stat.

4   Ann. § 50-639(b) ("Notwithstanding any provision of law, no action for breach of

5   warranty with respect to property subject to a consumer transaction shall fail because

6   of a lack of privity between the claimant and the party against whom the claim is

7   made.")

8       As courts have held, differences with respect to the privity requirement are

9   material. *See Darisse v. Nest Labs, Inc.*, No. 14-cv-01363-BLF, 2016 U.S. Dist.

10  LEXIS 107938, at *33-34 (N.D. Cal. Aug. 15, 2016) (differences in the law with

11  respect to privity requirement "are material").

> ### 2. Under *Mazza*, California does not have a predominant interest in applying its laws to govern Kansas transactions

13  Because Kansas law and California law differ materially with respect to

14  consumer protection claims and express and implied warranty claims under the

15  uniform commercial code, the Court must decide which law to apply. *Mazza* supplies

16  the answer: Kansas law, the law of the state in which Plaintiffs reside and the purchase

17  of the vehicles occurred, applies because Kansas has the superior interest in regulating

18  sales to its citizens and within its territory while adequately protecting freedom of

19  business there. As *Mazza* held, "[e]ach of our states has an interest in balancing the

20  range of products and prices offered to consumers with the legal protections afforded

21  to them." *Mazza*, 666 F.3d at 592. The consumer fraud statutes differ precisely

22  because each state has chosen a different balance between protecting its residents and

23  maintaining economic growth and business development. *See id.*; *Tucci v. Club*

24  *Mediterranee*, 89 Cal. App. 4th 180, 189-93 (2001).

25      Each of the states has an interest in applying its own laws to consumer

26  transactions within its borders because "every state has an interest in having its law

27  applied to its resident claimants." *Mazza*, 666 F.3d at 591-92 (quoting *Zinser v.*

28

*Accufix Research Inst., Inc.*, 253 F.3d 1180, 1187, amended, 273 F.3d 1266 (9th Cir. 2001)). *Mazza* further establishes that the other states' interests would be most impaired by applying California laws to non-California transactions. *Id.* at 593. As *Mazza* observed, California courts themselves recognize that "with respect to regulating or affecting conduct within its borders, the place of the wrong has the predominant interest." *Id.* (quoting *Hernandez v. Burger*, 102 Cal. App. 3d 795, 801-02 (1980)). And as *Mazza* further observed, "California's interest in applying its law to residents of foreign states is attenuated." *Id.* at 594 (citing *Edgar v. MITE Corp.*, 457 U.S. 624, 644 (1982)). Finally, federalism requires honoring other states' policy judgments in cases involving its own citizens. *Id.* at 591 (citing *State Farm Mut. Auto Ins. Co. v. Cambell*, 538 U.S. 408, 422 (2003)).

* * *

In sum, there are material differences between the Kansas CPA and California's UCL and CLRA; and between Kansas and California law with respect to express and implied warranty claims. Because Kansas has a strong interest in applying its own laws to transactions that take place within its own borders and which involve their own citizens, and California's interest in applying its law to those transactions is attenuated, California law therefore does not govern Plaintiffs' case. Accordingly, Plaintiffs' individual claims under the UCL (Count IV) and CLRA (Count V), and for breach of express and implied warranties under the California Commercial Code (Counts VIII and IX), must be dismissed in their entirety and with prejudice.

## V.     Plaintiffs' Claim for Violation of the Kansas CPA (Count X) Fails

Deceptive trade practices under the Kansas CPA must be alleged with specificity consistent with Rule 9(b) of the Federal Rules of Civil Procedure. *Shepard v. DineEquity, Inc.*, No. 08-2416-KHV, 2009 U.S. Dist. LEXIS 97245, at *32 (D. Kan. Sep. 25, 2009) (citing *Burton v. R.J. Reynolds Tobacco Co.*, 884 F. Supp. 1515, 1524 (D. Kan. 1995)). Plaintiffs must "set forth the time, place, and contents of the false representation, the identity of the party making the false statements and the

consequences thereof." *Plastic Packaging Corp. v. Sun Chem. Corp.*, 136 F. Supp. 2d 1201, 1203 (D. Kan. 2001).

Plaintiffs do not specify any particular section of the Kansas CPA upon which their claim is based, but Paragraph 189 of the Complaint suggests Plaintiffs assert claims under Kan. Stat. § 50-626(b)(1) . *See* Compl. ¶ 189 (alleging that AHM made "false" or "misleading" representations and that AHM advertised "the subject of a consumer transaction with intent not to sell as advertised.") However, Plaintiffs' allegations are insufficient to state a viable claim under Kan. Stat. § 50-626(b)(1) because Plaintiffs do not identify *any* representation by AHM relating to "the source, sponsorship, approval, or certification," "characteristics, ingredients, uses, benefits, alterations, or quantities," or "a particular standard, style or model" of 2012-2015 Honda vehicles. Compl. ¶ 189(a)-(c). Nor have Plaintiffs alleged any facts to support a claim that AHM advertised 2012-2015 Honda vehicles with the intent not to sell them *as advertised. Id.* ¶ 189(d). Any claim under Section 50-626(b)(1) of the Kansas CPA must therefore be dismissed. *Thompson v. Jiffy Lube Int'l, Inc.*, No. 05-1203-WEB, 2006 U.S. Dist. LEXIS 39113, at *27-28 (D. Kan. June 13, 2006) (dismissing Kansas CPA claim where the complaint failed to describe with particularity any representations upon which claim was based or how or why the allegedly misleading representation was false or misleading).

To the extent Plaintiffs' Kansas CPA claim is based on Kan. Stat. § 50-626(b)(2) or (3), the claim fails because Plaintiffs have failed to allege any facts to support an inference that AHM made any oral or written representation, failed to state a material fact, or concealed or omitted a material fact *with the intent to deceive* Plaintiffs. *See Cornelison v. Denison State Bank*, 315 P.3d 278 (Kan. Ct. App. 2014) (claims under Kan. Stat. § 50-626(b)(2) and (b)(3) require proof of intent to deceive); *Heller v. Martin*, 14 Kan. App. 2d 48, 52, 782 P.2d 1241 (1989) (Kan. Stat. **§** 50-626(b)(3) does not apply to mere nondisclosure; rather, it applies to intentional concealment of or failure to state a material fact). Assuming the truth of Plaintiffs'

220289741

allegations (a) that the fuel lines and wiring harnesses in Plaintiffs' vehicle *were* composed of soy-based materials, (b) that AHM was *aware* that the fuel lines and wiring harnesses were composed of soy-based materials when Plaintiffs purchased their vehicles, and (c) that AHM was aware that rodents are somehow more attracted to soy-based wiring insulation than they are to petroleum- or glass-based wiring insulation, Plaintiffs allege *no facts* to support an inference that AHM *intentionally deceived* Plaintiffs with respect to the composition of the wiring insulation in their vehicle. Nor could AHM, as a practical matter, conceal the composition of the wiring insulation in Plaintiffs' vehicle.**²**

## VI.   Plaintiffs' Breach of Express Warranty Claims (Counts VIII and XI) Based on Limited 3-year/36,000-mile NVLW Fails as a Matter of Law Because Plaintiffs Have Alleged a Design Issue

AHM's limited 3-year/36,000-mile NVLW covers defects in "material or workmanship," not in design. *See* Compl., Ex. 1 *thereto*, at p. 9. Based on Plaintiffs' allegations, it is clear that the "defect" about which Plaintiffs complain is one concerning an alleged design decision by Honda to incorporate soy-based materials in the insulation coating electrical wiring. *See id.* ¶ 29 (alleging that "automobile manufacturers, including Honda, migrated from petroleum-based insulation to soy-based insulation"). Indeed, Plaintiffs fail to allege any facts in their Complaint suggesting that their Honda vehicles "performed differently from other ostensibly identical units of the same product line," a key allegation in stating a claim for manufacturing defects. *See McCabe v. Am. Honda Motor Corp.*, 100 Cal. App. 4th 1111, 1119-20 (2002); *see also Gertz v. Toyota Motor Corp.*, No. CV 10-1089 PSG,

---

² It is unclear whether Plaintiffs also allege a claim for unconscionable acts or practices under Kan. Stat. § 50-627. To the extent Plaintiffs' Complaint can be fairly read to include a claim that AHM "excluded, modified or otherwise attempted to limit . . . the implied warranties of merchantability . . . or any remedy provided by law for a breach of those warranties," the claim fails as a matter of law. *See* Kan. Stat. § 50-627(7). The NVLM does not exclude an implied warranty of merchantability and any language limiting incidental or consequential damages in the NVLW does not violate Kan. Stat. § 50-627. *See* Compl., Ex. 1 *thereto*, at p. 39; *Farrell v. Gen. Motors Corp.*, 249 Kan. 231, 240–41 (1991) (it was permissible to limit consequential damages in an agreement that provided extra benefits in addition to implied warranties).

2011 U.S. Dist. LEXIS 94183, at *10-11 (C.D. Cal. Aug. 22, 2011), *aff'd sub nom. Troup v. Toyota Motor Corp.*, 545 Fed. Appx. 668, 669 (9th Cir. 2013) (affirming dismissal of breach of express warranty claim where gravamen of complaint was based on design decision to use resin to construct gas tanks) [hereinafter, "*Gertz*"].

Plaintiffs' express warranty claim fails under *Gertz*. In *Gertz*, the plaintiffs alleged that the use of a particular material (resin) to construct fuel tanks in certain Prius vehicles caused the fuel tanks to contract in cold weather, which the plaintiffs claimed constituted a "defect" that was required to be repaired under a limited warranty. *Gertz*, 2011 U.S. Dist. LEXIS 94183, at *1-2; *Troup*, 545 Fed. Appx. at 669. The district court held that given the plaintiffs' allegations that the purported "defect" existed with respect to *all* putative class vehicles, and not merely the particular vehicle owned by the plaintiffs, the plaintiffs alleged a design defect. *Gertz*, 2011 U.S. Dist. LEXIS 94183, at *10-11. The district court dismissed the plaintiffs' claim for breach of the limited warranty holding that under California law, a limited warranty for "repairs or adjustments for defects in materials or worksmanship of any part" did not cover design defects. *Id.* The Ninth Circuit affirmed because "[d]espite its scattered references to 'materials', the gravamen of the complaint [was] that the Prius's defect resulted from the use of resin to construct the gas tanks, which [was] a design decision." *Troup v. Toyota Motor Corp.*, 545 Fed. Appx. 668, 669 (9th Cir. 2013).

As in *Gertz*, the gravamen of Plaintiffs' Complaint is the design decision to allegedly incorporate soy-based material in insulation coating electrical wiring. *See, e.g.*, Compl. ¶ 30 (alleging that "Honda made the decision to switch its insulation to a soy-based material"). Also, as in *Gertz*, Plaintiffs allege that "*all*" 2012-2015 model year Honda vehicles are equipped with "soy-based insulation and/or other soy-based parts and components." Compl. ¶ 1, fn. 1 (emphasis added). Accordingly, Plaintiffs' breach of express warranty claim, based on a design decision, must be dismissed as a matter of California law. *See Daugherty v. Am. Honda Motor Co., Inc.*, 144 Cal. App.

220289741

4th 824, 830 (2006), *as modified* ("[Plaintiff] argues . . . that a defect that exists during the warranty period is covered, particularly where it results from an 'inherent design defect,' if the warrantor knew of the defect at the time of the sale. We disagree."); *Sharma v. BMW of N. Am., LLC*, No. C-13-2274 MMC, 2014 U.S. Dist. LEXIS 84406, at *12-13 (N.D. Cal. June 19, 2014) ("Under California law, a warranty that provides protection against 'defects in materials or workmanship' does not cover design defects.") (citing, among others, *Moss v. Smith*, 181 Cal. 519, 520 (1919) and *Paduano v. American Honda Motor Co.*, 169 Cal. App. 4th 1453, 1467-68 (2009)); *Clark v. LG Elecs. U.S.A., Inc.*, No. 13-cv-485 JM, 2013 U.S. Dist. LEXIS 155179, at *20-21 (S.D. Cal. Oct. 29, 2013); *Horvath v. LG Elecs. MobileComm U.S.A., Inc.*, No. 3:11-CV-01576-H-RBB, 2012 U.S. Dist. LEXIS 19215, at *13 (S.D. Cal. Feb. 13, 2012) ("An express warranty covering 'materials and workmanship' does not include design defects."); *Brothers v. Hewlett-Packard Co.*, No. C-06-02254 RMW, 2007 U.S. Dist. LEXIS 13155, at *9, 14-15 (N.D. Cal. Feb. 12, 2007) (one-year limited warranty for laptop computer covering defects in "materials or workmanship under normal use" did not cover defects arising in a product that was manufactured in accordance with the product's intended specifications).

Plaintiffs' Complaint implicates Kansas law. *See* Compl. ¶¶ 199-212 (Count XI). Although AHM was not able to find any case law on point in Kansas, the law in numerous other courts is consistent with the law in California. *See, e.g.*, *Feuerstein v. Home Depot, U.S.A., Inc.*, No. 2:12-cv-01062 JWS, 2014 U.S. Dist. LEXIS 78131, at *22-23 (D. Ariz. June 6, 2014) ("Limited Lifetime Warranty" that pertained only to defects in "workmanship or materials" did not apply to alleged defects in the ladder's design and warnings); *Orthoflex, Inc. v. Thermotek, Inc.*, No. 3:11-CV-0870-D, 2013 U.S. Dist. LEXIS 112865, at *31 (N.D. Tex. Aug. 9, 2013) (applying Texas law, a warranty that product would be free from defects in material and workmanship did not cover design defects); *Bruce Martin Constr. v. CTB, Inc.*, 735 F.3d 750, 754 (8th Cir. 2013) (under Missouri law, "a design defect cannot also be a defect in material and

17

1  workmanship"); *Mack Trucks, Inc. v. Borgwarner Turbo Sys., Inc.*, 508 Fed. Appx.

2  180, 184 (3d Cir. 2012) (rejecting argument that claims allegedly caused by design

3  defects fell within the scope of the material and workmanship warranty); *Cali v.*

4  *Chrysler Group LLC*, No. 10 Civ. 7606 (JSR), 2011 U.S. Dist. LEXIS 5220, at *6-7

5  (S.D.N.Y. Jan. 18, 2011) ("[T]he process of selecting and arranging the component

6  parts of the Vehicle clearly implicates the Vehicle's design. The terms 'material,'

7  'workmanship,' or 'factory preparation,' on the other hand, refer to the mechanical

8  process of implementing that design."), *aff'd* 426 Fed. Appx. 38 (2d Cir. Aug. 30,

9  2011). As numerous courts who have decided the issue have held, Plaintiffs' claim for

10  breach of express warranty under Kansas law should likewise fail.

11      Accordingly, because Plaintiffs' Complaint alleges a design-related issue, and

12  not a manufacturing defect, Plaintiffs' claim for breach of the NVLW, under either

13  California or Kansas law, should be dismissed with prejudice.

## VII.  "Acts of Nature" Exclusion in NVLW Bars Plaintiffs' Claims for Breach of Express Warranty (Counts VIII and XI) and for Breach of the Implied Warranty of Merchantability (Counts IX and XII)

16      Plaintiffs' express warranty claims fail because their allegations establish that

17  the damage to their vehicles was caused by an act of nature, which is expressly

18  excluded under the express terms of the NVLW. *See* Compl., Ex. 1, at p. 8 (stating

19  that the "warranties in this booklet do not cover: [¶] The failure of any part or

20  accessory due to: [¶] . . . acts of nature.") But for the acts of rodents doing what they

21  naturally do, *i.e.*, chewing and gnawing, the electrical wiring and fuel lines in

22  Plaintiffs' vehicles would presumably operate without any issue. And it is beyond

23  question that rodents gnawing on wires is no less an act of nature than damage caused

24  to a car by hail or floods. *Cf. Wilhelmsen v. JC Plumbing & Heating*, No. 05-C-170,

25  2008 N.H. Super. LEXIS 123, *4 (N.H. Super. Ct. 2008) (describing damage caused

26  to Jacuzzi insulation by rodent breech as an "act of nature"). Plaintiffs' assertion that

27  AHM should be liable because it could have done more to "prevent" the damage by

28  using rodent resistant tape or a different insulation substance does not alter the fact

220289741

that rodents existing in nature caused the damage to Plaintiffs' vehicles and that such damage is outside of the scope of the NVLW.

For the same reason the NVLW does not cover wire damage caused by rodents, the implied warranty of merchantability does not cover the costs of such repairs. This is because the Uniform Commercial Code, as adopted in California and Kansas, makes clear that "[w]arranties whether express or implied shall be construed as *consistent* with each other" and that "[e]xpress warranties displace[] *inconsistent* implied warranties other than an implied warranty of fitness for a particular purpose." Cal. Comm. Code § 2317; Kan. Stat. § 84-2-317 (emphases added). Thus, the "acts of nature" exclusion precludes Plaintiffs' claims for breach of the implied warranty of merchantability just as it precludes Plaintiffs' express warranty claims.

*Consolidated Papers, Inc.* is directly on point. In that case, the buyer of an equipment (a "white liquor clarifier") alleged that the manufacturer warranted the clarifier would have "maximum resistance to corrosion and abrasion." *Consolidated Papers, Inc. v. Dorr-Oliver, Inc.*, 153 Wis. 2d 589, 594 (Ct. App. 1989). The buyer sued the manufacturer when the equipment failed due to corrosion. *Id.* at 592. The seller's express warranty provided that "decomposition by chemical action and wear . . . shall not constitute defects." *Id.* at 600. Because "decomposition by chemical action" was synonymous with "corrosion," the court held that it was unreasonable to construe the contract to permit recovery for damage due to corrosion. *Id.* at 601. The court then rejected the buyer's attempt to make an end-run around the express warranty by asserting a claim for breach of the implied warranty of merchantability and held that pursuant to the Uniform Commercial Code, the "provision of the express warranty as to corrosion . . . over[rode] any implied warranties of merchantability." *Id.* at 601 (citing Wis. Stat. § 402.317(3)); *cf. El Zarape Tortilla Factory, Inc. v. Plant Food Corp.*, 90 Cal. App. 2d 336, 346-47 (1949) (where contract expressly warranted that corn would be "#2 white corn – bulk," which was not fit for human consumption, an implied warranty that the corn was fit for human consumption could not arise).

As in *Consolidated Papers*, Plaintiffs' attempt to make an end-run around the express NVLW, which precludes coverage for the failure of any part caused by "acts of nature," by asserting a claim for breach of the implied warranty of merchantability for damage caused by an act of nature, must be rejected pursuant to the same provision of the Uniform Commercial Code upon which the *Consolidated Papers* court relied. *Compare* Wis. Stat. § 402.317(3) (relied on by court in *Consolidated Papers*), *with* Cal. Comm. Code § 2317; Kan. Stat. § 84-2-317.

* * *

In sum, any claim for breach of the NVLW fails because the failure of any part due to "acts of nature" is excluded from coverage. Similarly, because Plaintiffs' claim for breach of the implied warranty of merchantability is based on an act of nature, which is inconsistent with the express NVLW, the implied warranty is "displaced" by the terms of the express NVLW and the implied warranty claim must therefore likewise be dismissed.

**VIII.  Plaintiffs' Claims for Breach of Express Warranty (Count II) and Breach of the Implied Warranty of Merchantability (Count III) Pursuant to the "Uniform Commercial Code" Should Be Stricken or Dismissed As Duplicative Claims**

Plaintiffs allege a claim for breach of express warranty and for breach of the implied warranty of merchantability pursuant to the "Uniform Commercial Code." *See, e.g.*, Compl. ¶¶ 85-86 (Count II), 98-99 (Count III). It is unclear upon which section(s) of the "Uniform Commercial Code" Counts II and III are based.[3] In any event, because Plaintiffs allege a claim for breach of express warranty and for breach of the implied warranty of merchantability pursuant to the Uniform Commercial Code *as adopted* in Kansas, *see* Compl. ¶¶ 199-212 (Count XI) and ¶¶ 213-219 (Count XII), Count II for breach of express warranty and Count III for breach of the implied warranty of merchantability pursuant to the "Uniform Commercial Code" are

---

[3] To the extent Counts II and III of Plaintiffs' Complaint are based on a section of the Uniform Commercial Code other than sections 2-313 and 2-314, codified at Kan. Stat. § 84-2-313 and Kan. Stat. § 84-2-314, respectively, AHM reserves the right to address the merits of the claims.

1    duplicative of Counts XI and XII. Accordingly, Counts II and III should be stricken or

2    dismissed. *See Robinson v. Kia Motors Am., Inc.*, No. 13-006, 2015 U.S. Dist. LEXIS

3    121755, at *41 (D.N.J. Sep. 11, 2015) (dismissing breach of contract claim that was

4    duplicative of breach of express warranty claim).

5    **IX.   Plaintiffs' Claim for Unjust Enrichment (Count XIII) Under Either
           California or Kansas Law Fails**

6         The law concerning unjust enrichment in California remains unclear. *See*

7    *Carswell v. JPMorgan Chase Bank N.A.*, 500 Fed. Appx. 580, 582 (9th Cir. 2012)

8    (noting split among California courts). However, any claim for "unjust enrichment"

9    under California law fails because Plaintiffs do not plead that there exists an

10   unenforceable contract or that an express contract does not govern the relationship

11   between the parties. *See Masonek v. Wells Fargo Bank, N.A. (In re Medical Capital*

12   *Sec. Litig.)*, No. 10-2145 DOC, 2010 U.S. Dist. LEXIS 143439, at *29-30 (C.D. Cal.

13   Aug. 31, 2010) (dismissing claim for unjust enrichment where the plaintiffs failed to

14   plead an unenforceable contract or that the express contract did not govern the

15   relationship between the parties, and instead simply disagreed regarding what duties

16   were imposed by the contract); *see also Smith v. Ford Motor Co.*, 462 Fed. Appx. 660,

17   665 (9th Cir. 2011) (dismissal of fraud-based claims required dismissal of claim for

18   unjust enrichment because it was not an independent cause of action in California)

19   (citations omitted).

20        An unjust enrichment claim under Kansas law similarly fails. Under Kansas

21   law, "[u]njust enrichment and restitution, or quantum meruit as it is also called, are

22   synonymous terms for the doctrine of quasi contract." *Regal Ware, Inc. v. Vita Craft*

23   *Corp.*, 653 F. Supp. 2d 1146, 1150-51 (D. Kan. 2006). In *Regal Ware*, the district

24   court held that because the duty that the plaintiff sought to impose was based upon an

25   express contract, it was inappropriate to use the "legal device" of unjust enrichment to

26   enforce the contractual duties. *Id.* Likewise, here, because Plaintiffs' claims are based

27   on duties they claim are imposed by the express, written NVLW, their unjust

28

220289741

enrichment must be dismissed even if Kansas law applies.

## X.  Plaintiffs' Independent Claim for Declaratory Relief (Count XIV) Should Be Dismissed

Plaintiffs' claim pursuant to 28 U.S.C. § 2201 must also be dismissed. "[A] declaratory relief claim fails when it is a duplicate of other claims." *Lenhoff Enters. v. United Talent Agency, Inc.*, No. CV 15-01086-BRO (FFMx), 2015 U.S. Dist. LEXIS 150141, at *18 (C.D. Cal. Sep. 18, 2015) (citations omitted).

"The purpose of declaratory relief 'is to afford a new form of relief where needed and not to furnish a litigant with a second cause of action for the determination of identical issues.'" *Tirabassi v. Chase Home Fin., LLC*, No. 14-08790 BRO, 2015 U.S. Dist. LEXIS 43730, at *31 (C.D. Cal. Mar. 24, 2015) (quoting *Lai v. Quality Loan Serv. Co.*, No. CV 10-02308 PSG, 2010 U.S. Dist. LEXIS 97121, at *3 (C.D. Cal. Aug. 26, 2010)). "While the existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate, the availability of other adequate remedies may make declaratory relief inappropriate." *Tirabassi*, 2015 U.S. Dist. LEXIS 43730, at *31-32 & n.12 (quoting *Anderson v. U.S. Bank, Nat'l Ass'n*, No. CV 12-02743 IEG, 2013 U.S. Dist. LEXIS 53999, at *5 (S.D. Cal. Apr. 15, 2013)). Declaratory relief is inappropriate "where a plaintiff has alleged a substantive cause of action, [and] a declaratory relief claim . . . [is] a superfluous 'second cause of action for the determination of identical issues' subsumed within the first." *Jensen v. Quality Loan Serv. Corp.*, 702 F. Supp. 2d 1183, 1189 (E.D. Cal. 2010) (citations omitted).

Here, Plaintiffs' standalone claim for declaratory relief is superfluous and unnecessary as it is duplicative of their express warranty claims. Plaintiffs seek a declaration that "Honda's warranties for Class Vehicles provide coverage for, and are to be read to include coverage for, rodent or other damage in Class Vehicles resulting from chewing or eating soy-based parts or materials in Class Vehicles' electrical wiring and wiring systems." *See* Compl. ¶ 233. Plaintiffs also seek a declaration that

1   "nothing in Honda's warranties for Class vehicles disclaims or excludes warranty

2   coverage for the Defect" described in the Complaint. *Id.* However, those

3   determinations are identical to the determinations that will be made with respect to

4   Plaintiffs' cause of action for breach of the NVLW.

5          Where, as here, a request for declaratory relief "'neither serve[s] a useful

6   purpose in clarifying and settling the legal relations in issue nor terminate[s] the

7   proceedings and afford[s] relief from the uncertainty and controversy faced by the

8   parties,'" it is proper to dismiss the claim. *Permpoon v. Wells Fargo Bank Nat. Ass'n*,

9   No. 09-01140-H, 2009 U.S. Dist. LEXIS 89723, *14 (S.D. Cal. Sep. 29, 2009) (citing

10  *United States v. Washington*, 759 F.2d 1353, 1356-57 (9th Cir. 1985)); *Tirabassi*,

11  2015 U.S. Dist. LEXIS 43730, at *31-32 & n.12 (dismissing request for declaratory

12  relief as "inappropriate" where it did not entitle plaintiff to any relief beyond what

13  plaintiff may seek in connection with substantive claims); *Fradis v. Savebig.com*, No.

14  CV 11-07275 GAF, 2011 U.S. Dist. LEXIS 154915, at *21-22 (C.D. Cal. Dec. 2,

15  2011) (dismissing plaintiffs' freestanding cause of action for declaratory relief which

16  was duplicative of their substantive causes of action).

17         Accordingly, Count XIV of the Complaint seeking declaratory relief should be

18  dismissed with prejudice.

19  **XI.   Plaintiffs' Magnuson-Moss Claim (Count I) Fails**

20         Plaintiffs also allege a derivative claim under Magnuson-Moss. *See* Compl. ¶¶

21  67-83 (Count I). The Magnuson-Moss Warranty Act authorizes civil actions by

22  consumers to enforce the terms of an implied or express warranty under state law.

23  *Daugherty v. Am. Honda Motor Co*., 144 Cal. App. 4th 824, 833 (2006). It requires

24  the application of state warranty laws; it does not create additional federal law

25  protections or expand a plaintiff's rights under state warranty law. *Monticello v.*

26  *Winnebago Indus. Inc.*, 369 F. Supp. 2d 1350, 1356 (N.D. Ga. 2005); *Daugherty*, 144

27  Cal. App. 4th at 833.

28         Because Plaintiffs' state law warranty claims fail for the reasons discussed

above in Sections VI to VIII, Plaintiffs' Magnuson-Moss claim necessarily fails as a matter of law and should also be dismissed. *Daugherty*, 144 Cal. App. 4th at 833 ("[T]he trial court correctly concluded that failure to state a warranty claim under state law necessarily constituted a failure to state a claim under Magnuson-Moss."); *Birdsong v. Apple, Inc.*, 590 F.3d 955, 958 (9th Cir. 2009) ("[T]he federal Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.* require[s] the plaintiffs to plead successfully a breach of state warranty law. Thus, because we conclude that the plaintiffs have failed to state a claim for breach of an express or implied warranty, their claims under these two statutes are also properly dismissed."); *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008) ("[T]his court's disposition of the state law warranty claims determines the disposition of the Magnuson-Moss Act claims."); *Dinwiddie v. Suzuki Motor of Am., Inc.*, 111 F. Supp. 3d 1202, 1213 (W.D. Okla. 2015) ("As case law teaches, 'claims under . . . Magnuson-Moss . . . stand or fall with . . . express and implied warranty claims under state law.'") (citing *Clemens*, 534 F.3d at 1022); *Janke v. Brooks*, No. 11-cv-837-REB, 2012 U.S. Dist. LEXIS 51297, at *5-6 n.3 (D. Colo. Apr. 11, 2012) (dismissal of state law warranty claims is fatal to Magnuson-Moss claim) (citing *Fedrick v. Mercedes-Benz USA, LLC*, 366 F. Supp. 2d 1190, 1200 n.14 (N.D. Ga. 2005)).

## XII.   Conclusion

For the reasons described above, and as may be supplemented in AHM's Reply Brief and at the hearing, AHM requests that Plaintiffs' claims be dismissed.

Dated: March 6, 2017

SIDLEY AUSTIN LLP
Michael L. Mallow
Mark D. Campbell
Darlene M. Cho

By:  /s/ *Michael L. Mallow*
Michael L. Mallow
Attorneys for Defendant
AMERICAN HONDA MOTOR CO.,
INC.